**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Counsel to the Debtor and
Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ICON EYEWEAR, INC.,[1]<br><br>           Debtor-in-Possession. | Chapter 11<br><br>Case No. 18-_____ (___) |

**DECLARATION OF BRIAN LISTON IN SUPPORT OF DEBTOR'S
CHAPTER 11 PETITION AND FIRST DAY RELIEF**

I, Brian Liston, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information and belief:

1.  On the date hereof (the "**Petition Date**"), Icon Eyewear, Inc. (the "**Debtor**") commenced in this Court a case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"). I am the Senior Vice President of Finance of the Debtor and have served in that capacity since 2009. I am fully familiar with the Debtor's day-to-

---

[1] The last four digits of the Debtor's federal identification number are 1657.

58450/0001-16583972v2

day operations, businesses and financial affairs, and am duly authorized to make this Declaration on the Debtor's behalf.

2. To minimize the potentially adverse effects that the commencement of this chapter 11 case may have on the Debtor's ability to continue operations and to facilitate an orderly transition into chapter 11, the Debtor has filed certain "first day" motions and applications with the Court contemporaneously herewith (each a "**First Day Motion**" and collectively the "**First Day Motions**"). I am familiar with each of the First Day Motions and believe the relief sought therein is necessary to facilitate an orderly transition into chapter 11 and avoid the immediate and irreparable harm the Debtor will suffer if it is not authorized to make certain essential payments and otherwise continue its business operations as requested in the First Day Motions.

3. In accordance with the Local Rules and given the nature of this chapter 11 case, the Debtor has requested that the Court schedule a hearing at its earliest convenience to consider the First Day Motions. The Debtor will continue to operate its business and manage its assets as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. I submit this Declaration to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of the Debtor's voluntary chapter 11 petition and First Day Motions. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management and the Debtor's professional advisors, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs.

If I were called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. This Declaration is divided into three (3) parts. Part I describes the Debtor's business, history, and pre-petition organizational and debt structure. Part II describes the circumstances leading to this chapter 11 filing. Part III sets forth the purpose of the chapter 11 filing and the relief requested in the First Day Motions.

## II.     FACTUAL BACKGROUND

**A.     General Overview**

6. The Debtor is a New Jersey corporation with its principle assets and main operations in South Hackensack, New Jersey.

7. The Debtor is owned by Michael and Julie Chang, with Michael holding 51% of the equity in the Debtor and Julie holding the remaining 49%.

8. Founded in 1987, the Debtor manufactures and imports fashion and active sunglasses, reading glasses, and accessories (collectively, "**Goods**") for men, women, and children. Primarily, the Debtor manufactures Goods under an array of private-label, licensed, and proprietary brands. The Debtor supplies its clients with wholesale Goods for resale to end-users. Its private-label retailers—which comprise roughly 88 percent of the company's business—include Nordstrom, Forever 21, Urban Outfitters, The Buckle, Ann Taylor, JC Penney, Kroeger, Costco, Target, and Walmart. The Debtor's licensed brand portfolio features names such as Dickies, Zoo York, Geoffrey Beene, Franco Sarto, and Sag Harbor.

9. The Debtor maintains its center of operations, including its corporate offices and a 135,000 square-foot distribution facility, in South Hackensack, New Jersey. The Debtor also maintains a showroom in New York City. The Debtor manufactures its Goods in Asia. It has

3

international sourcing offices in Asia as well as corporate offices and quality control factory teams in Asia.

10. In 2015 and 2016, the Debtor's net sales totaled approximately $42-44 million, with EBITDA in excess of $2 million each year. In 2017, the Debtor's net sales totaled approximately $32 million, with an EBITDA loss of approximately $1.3 million.

11. As of the Petition Date, the Debtor has approximately 70 employees, of whom approximately half are salaried employees and half are employed on an hourly basis.

12. As of the Petition Date, the Debtor has assets (at book value) of approximately $11 million and liabilities of approximately $15 million.

**B.    Capital Structure**

    **(i)    Secured Debt.**

13. On June 8, 2012, M&T Bank, Manufacturers and Traders Trust Company ("**M&T**") extended a $10,000,000.00 secured, revolving asset-based loan to the Debtor (the "**M&T Loan**"). The M&T Loan is evidenced and governed by, *inter alia*, a Standard LIBOR Grid Note (as amended, the "**Note**"), a Credit Agreement, as amended by that certain Amendment No. 1 to Credit Agreement dated October 7, 2014, and a General Security Agreement (the "**M&T Loan Documents**"). The obligations under the M&T Loan are secured by all or substantially all of the Debtor's assets. The Debtor's obligations to M&T are guaranteed by Michael Chang and Julie Chang.

14. The Note has been amended from time to time. On February 12, 2016, the Debtor and M&T entered into a Fifth Amended and Restated Line of Credit Note Standard LIBOR Grid Note (LIBOR and Prime) in the principal amount of $20,000,000, which is the current Note in place.

4

15. In connection with the M&T Loan, M&T issued a $250,000 Irrevocable Standby Letter of Credit in favor of the landlord of the South Hackensack facility (the "**Standby Letter of Credit**"). As of the Petition Date, the landlord had not drawn upon the Standby Letter of Credit.

16. As of the Petition Date, the Debtor owed M&T approximately $7.8 million with respect to the M&T Loan, including on account of the amounts committed under the Standby Letter of Credit. By letter dated August 29, 2018, M&T declared the M&T Loan to be in default. Following its notice of default, M&T ceased providing any additional funding to the Debtor under the revolving credit facility.

17. With no access to the M&T revolving credit line and limited liquidity, on November 30, 2018, and in the weeks leading up to the Petition Date, the Debtor obtained loans from Three S Investments, LLC ("**Three S**"), an entity owned by Michael Chang, pursuant to which Three S extended loans to the Debtor aggregating $730,000 (the "**Three S Loans**"). The proceeds of the Three S Loans were used to meet the Debtor's operating expenses, including, without limitation, the payroll for November 30 and December 14, and rent for the month of December 2018. The Three S Loans are evidenced by, *inter alia*, a number of a Promissory Notes (the "**Three S Notes**") and a Second Lien Security Agreement (the "**Three S Security Agreement**"). The Three S Loans are expressly subordinate to the M&T Loan. To secure the obligations under the Three S Loans, the Debtor granted Three S a lien and security interest, expressly subordinate to M&T, in all or substantially all of the Debtor's assets.

18. As of the Petition Date, the Three S Notes and the Three S Security Agreement, and all liens, claims, right, title and interest therein, were assigned to Five Comets, LLC ("**Five Comets**"), an entity in which Michael Chang and Julie Chang are each a member. On that same

date, Five Comets agreed, subject to approval by the Bankruptcy Court, to extend up to an additional $2,270,000 in debtor-in-possession financing to the Debtor. The proposed debtor-in-possession financing will be subordinate in all respects to the M&T Loan, but senior in priority to the amounts initially advanced by Three S.

19. As of the Petition Date, the obligations under the Three S Loans totaled $730,000, plus interest.

### (ii)    Unsecured Debt.

20. As of the Petition the Debtor owes its trade creditors in excess of $5.4 million. The Debtor also owes insiders of the Debtor, including Michael Chang, approximately $1,363,000, which amounts are unsecured.

## III.    FACTORS THAT PRECIPITATED THE DEBTOR'S CHAPTER 11 FILING

21. The Debtor operated profitably until 2017 when two one-time events—the loss of a major portion of its sales to its largest account and a change in the buying process of its third largest account—caused sales to drop precipitously. The Debtor's management at the time did not anticipate the lasting impact these events would have on the Debtor's sales and bottom line and, therefore, did not react quickly enough to these changes.

22. As a result of the Debtor's declining sales and distressed financial condition, in September of 2018, the Debtor's owners revamped the Debtor's management in an effort to stem losses. Among other initiatives, the Debtor's president was terminated and its former president, Bruce Bartley, was rehired as interim president to effectuate a turnaround. Prior to his retirement in late 2016, Bartley, a forty-year veteran of the industry, had spent ten years as the Debtor's president. Upon Bartley's return to the Debtor, he immediately undertook efforts to cut expenses and increase revenue by, among other things, (i) reducing redundancy and improving efficiencies

in staffing, (ii) implementing more efficient inventory procedures that resulted in fewer hours being expended by warehouse staff, and (iii) working to secure incremental licenses invaluable to maintaining and growing sales.  In total, these changes allowed the Debtor to reduce salary expense by approximately 20% year-over-year.  Bartley also implemented a plan to eliminate unprofitable product conversions, re-engineer certain assembly functions, and expand product offerings in better quality Goods targeting higher margin sales.

23. Even with the Debtor's efforts to implement an operational restructuring, it fell out of formula under the M&T Loan, prompting M&T to call the M&T Loan into default.  On August 29, 2018, M&T sent the Debtor a Notice of Default, Demand for Payment and Reservation of Rights.  Following the Notice of Default, M&T refused to make further advances under the Debtor's revolving credit facility, further constraining the Debtor as it attempted to revamp its business.

24. In the weeks leading up to the Petition Date, the Debtor has worked to address its liquidity crisis.  In that regard, in October of 2018, the Debtor retained Getzler Henrich & Associates LLC ("**Getzler Henrich**"), a financial advisory firm, charging Getzler Henrich with locating other sources of financing and working with the Debtor to address the Debtor's defaulted debt with M&T.

25. Although discussions with M&T have been productive since the onset of the Debtor's financial distress, M&T has not agreed to provide any advances to the Debtor and has not agreed to subordinate its liens or debt to any lender that would otherwise have been prepared to extend a loan to the Debtor.  Without adequate liquidity to continue operations, the Debtor obtained loans and commitments from Michael Chang and/or entities in which he is affiliated (capitalized by Michael Chang, his family members, and his business associates), including

7

Three S and Five Comets, to provide ongoing financing to the Debtor. The critical funding provided by Michael Chang and his affiliates has helped the Debtor avoid the need to immediately cease operations and liquidate its assets.

26. Notwithstanding the commitments of Three S and Five Comets, the Debtor needs to restructure its debt and secure ongoing asset-based financing to support its operations. Accordingly, the Debtor, with the assistance of its professionals, including Getzler Henrich, engaged in discussions with M&T aimed at being able to attract a new asset-based lender. The Debtor has reached an agreement in principal with M&T to restructure and repay the M&T Loan, to be implemented in the chapter 11 case. The agreement with M&T includes a significant discount on the Debtor's obligation and is expressly contingent on the Debtor paying off the discounted portion of the M&T Loan on or before February 28, 2018. In light of the exigency imposed by the February 28, 2018 payoff deadline, the Debtor anticipates filing a plan of reorganization and disclosure statement in short order, seeking preliminary approval of its disclosure statement, and requesting a combined hearing on its plan and disclosure statement on or before February 28, 2018.

27. With the restructuring and discounted payment of the M&T Loan, and the continued implementation of its operating initiatives, the Debtor believes that its financial condition will continue to improve. However, absent the chapter 11 to implement its operational and financial restructuring, the Debtor will be forced to cease operations and liquidate its assets. In a liquidation, the Debtor's creditors, other than M&T, will receive nothing on account of their claims. The Debtor has thus filed this chapter 11 case to preserve value, implement its restructuring, and emerge as a financially sound entity. The Debtor believes, as set forth in more detail below, that a chapter 11 filing is its best option for maximizing value for all stakeholders.

## IV.   THE PURPOSE OF THE CHAPTER 11 FILINGS

28.   The Debtor has evaluated its various restructuring options and determined that the best way to preserve its going concern value for the benefit of all stakeholders was to commence this chapter 11 case.  Specifically, the Debtor has filed this chapter 11 case to achieve a restructuring.  Through the chapter 11, the Debtor intends to continue operations with the funding provided by debtor-in-possession financing from Five Comets, implement the restructuring and refinance of the M&T Loan (at the agreed-upon discount) to attract a new exit facility lender on favorable terms, and emerge without the burdensome debt load currently preventing the Debtor from operating profitably.  The Debtor believes that these initiatives, coupled with the changes to management and operations outlined above, will stabilize its operations and allow it to thrive upon emergence, preserve dozens of jobs, and continue to provide significant value to its customers and end-users.

29.   In the interim, the Debtor has asked the Court to consider, on an expedited basis, certain First Day Motions.  The First Day Motions are designed to (a) enable the Debtor to operate effectively, ease the Debtor's transition into chapter 11, and mitigate potentially adverse effects of the chapter 11 filing; (b) minimize disruption of the Debtor's ability to continue providing quality service to its customers and, thus, preserve its customers' confidence and ensure their continued patronage; (c) maintain and bolster employee morale so as to reduce employee attrition during the Debtor's chapter 11 proceeding, which would have a detrimental impact on the Debtor's business and customer service; and (d) maintain the going concern value of the Debtor's business and assets while it reorganizes.

30. The Debtor has asked the Court to consider the following First Day Motions:

(a) Motion for Entry of an Order Extending the Debtor's Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs Pursuant to Fed. R. Bankr. P. 1007(c),

(b) Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 for Interim and Final Orders (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Determining Adequate Assurance of Payment for Future Utility Services, and (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Service,

(c) Debtor's Motion for an Order (I) Authorizing the Debtor to Continue and Maintain Its Existing Bank Accounts and Business Forms, (II) Modifying the Investment Guidelines, (III) Providing the United States Trustee with a 60-Day Objection Period, and (IV) Granting Related Relief,

(d) Debtor's Motion for an Order (I) Authorizing the Debtor to (A) Pay Pre-Petition Wages and Related Obligations, (B) Pay and Remit Payroll Taxes and Other Deductions to Third Parties, and (C) Honor and Process Workers' Compensation and Employee Benefit Obligations, and (II) Authorizing and Directing All Banks to Honor Checks and Transfers for Payment of Pre-Petition Employee Obligations; and

(e) Debtor's Motion for an Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing.

31. Each of these First Day Motions is crucial to the Debtor's restructuring efforts and preservation of the Debtor's assets and estate.[2]

---

[2] For a more detailed description of the First Day Motions, the Debtor respectfully refers the Court and parties-in-interest to the respective First Day Motions.

58450/0001-16583972v2

## V. CONCLUSION

32. The First Day Motions are designed enable the Debtor to stabilize its business and continue its operations in the ordinary course. Accordingly, the Debtor respectfully requests that the Court enter same.

_____
BRIAN LISTON