**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ICON EYEWEAR, INC.,[1]<br><br>        Debtor-in-Possession. | Chapter 11<br><br>Case No. 18-34902 (JKS) |

## DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125
## FOR ICON EYEWEAR INC.'S PLAN OF REORGANIZATION

---

[1] The last four digits of the Debtor's federal identification number are 1657.

# TABLE OF CONTENTS

**Page**

I.      SUMMARY ..................................................................................................................1

II.     INTRODUCTION ........................................................................................................2
        A.   Background ..................................................................................................... 2

III.    GENERAL INFORMATION ......................................................................................2
        A.   Description of the Debtor................................................................................. 2
        B.   The Debtor's Pre-Petition Indebtedness ......................................................... 2
        C.   Pre-Petition Litigation..................................................................................... 3
        D.   Events Precipitating the Chapter 11 Filing ..................................................... 4

IV.     THE CHAPTER 11 CASE ..........................................................................................5
        A.   Debtor-in-Possession Financing ..................................................................... 5
        B.   Committee Appointment................................................................................... 6
        C.   Claims Process and Bar Date .......................................................................... 6
        D.   Negotiation of Exit Financing.......................................................................... 6
        E.   Retention of Counsel........................................................................................ 7

V.      SUMMARY OF THE PLAN.......................................................................................7
        A.   Introduction ..................................................................................................... 7
        B.   Solicitation Package......................................................................................... 7
        C.   Confirmation Procedure ................................................................................... 8
        D.   Summary of Treatment .................................................................................. 12
        E.   Classification of Claims and Interests and Their Treatment Under the Plan........... 16

VI.     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; VOTING....................18
        A.   Classification.................................................................................................. 18

VII.    TREATMENT OF CLAIMS ......................................................................................18
        A.   Treatment of Claims ...................................................................................... 18
        B.   Modification of Treatment of Claims and Interests ................................................. 21

VIII.   PROVISIONS REGARDING THE DISBURSING AGENT ..........................................21
        A.   Appointment of the Disbursing Agent........................................................... 21
        B.   Rights and Powers of the Reorganized Debtor As Disbursing Agent ..................... 22

IX.     PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ........................22
        A.   Method of Payment........................................................................................ 22

B. Fractional Dollars; No De Minimis Distributions. .................................................. 22

C. Allocation of Plan Distributions Between Principal and Interest. ........................... 22

D. Objections to and Resolutions of Claim. ................................................................. 23

E. Objection Deadline .................................................................................................. 23

F. No Distribution Pending Allowance ....................................................................... 23

G. Escrow of Cash Distributions on Account of Disputed Claims................................ 23

H. Distribution After Allowance .................................................................................. 23

I. Investment of Segregated Cash and Property ......................................................... 23

J. Delivery of Distributions ......................................................................................... 24

K. Undeliverable Distributions .................................................................................... 24

L. Unclaimed Distributions .......................................................................................... 24

M. Set-Off...................................................................................................................... 24

X. MEANS FOR EXECUTION OF THE PLAN ................................................................25

A. Means for Implementation of the Plan..................................................................... 25

B. Reorganized Debtor. ................................................................................................ 25

C. Corporate Action; Effectuating Documents; Further Transactions. ........................ 26

D. Recording Documents............................................................................................... 27

E. Creditors' Committee............................................................................................... 27

XI. DISCHARGE AND INJUNCTION ...............................................................................27

A. Discharge of Claims and Termination of Equity Interests....................................... 27

B. Term of Bankruptcy Injunction or Stays ................................................................. 27

C. Exculpation .............................................................................................................. 28

XII. CAUSES OF ACTION ...................................................................................................28

A. Preservation of Causes of Action............................................................................. 28

XIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................................29

A. Rejection of Executory Contracts and Unexpired Leases........................................ 29

B. Payments Related to the Assumption of Executory Contracts & Unexpired Leases.
........................................................................................................................... 29

C. Deadline for Filing Proofs of Claim Relating to Rejected Executory Contracts and
Unexpired Leases...................................................................................................... 29

D. Post-Petition Contracts and Leases.......................................................................... 29

XIV. CONDITIONS TO THE EFFECTIVE DATE ................................................................30

A. Conditions Precedent to the Effective Date ............................................................. 30

B. Effect of Failure of Conditions ................................................................................ 30

58450/0001-16779401v1

C.    Waiver of Conditions Precedent to Effective Date ................................................... 30

D.    Simultaneous Transactions. ................................................................. 31

XV.   RETENTION OF JURISDICTION ..................................................................31

XVI.  MISCELLANEOUS PROVISIONS ..................................................................32

    A.    Headings. ................................................................................ 32

    B.    Exhibits/Schedules. ...................................................................... 32

    C.    Binding Effect. ........................................................................... 32

    D.    Successors and Assigns .................................................................. 32

    E.    Governing Law. ......................................................................... 33

    F.    Amendment or Modification of the Plan. ................................................ 33

    G.    Severability. ............................................................................. 33

    H.    Revocation or Withdrawal of the Plan. .................................................. 33

    I.    Notices. .................................................................................. 33

    J.    Withholding and Reporting Requirements. .............................................. 34

    K.    Filing of Additional Documents. ........................................................ 34

    L.    No Admissions. .......................................................................... 34

    M.   Reservation of Rights. ................................................................... 34

    N.    Payment Dates. .......................................................................... 34

    O.    Inconsistency ............................................................................. 34

    P.    Section 1125(e) Good Faith Compliance ................................................ 34

    Q.    Compromise of Controversies. ......................................................... 35

    R.    Closing of Case. ......................................................................... 35

XVII.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
    PLAN. ..................................................................................................35

    A.    Liquidation Under Chapter 7. ........................................................... 35

    B.    Alternative Plan of Reorganization ...................................................... 35

XVIII. RISK FACTORS ..........................................................................................36

    A.    Business Risks. .......................................................................... 36

    B.    Certain Federal Income Tax Consequences ............................................. 36

    C.    Bankruptcy Risks. ....................................................................... 37

XIX.  CONCLUSION ...........................................................................................38

58450/0001-16779401v1

# I.    SUMMARY

THIS DISCLOSURE STATEMENT ("**DISCLOSURE STATEMENT**") FOR ICON EYEWEAR INC.'S (THE "**DEBTOR**") PLAN OF REORGANIZATION, ATTACHED AS **EXHIBIT A** (THE "**PLAN**") AND RELATED MATERIALS DELIVERED HEREWITH ARE BEING PROVIDED BY THE DEBTOR TO KNOWN HOLDERS OF CLAIMS AND EQUITY INTERESTS PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.  THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.  NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.  NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.  CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.  NO STATEMENT OR INFORMATION CONCERNING THE DEBTOR OR ITS ASSETS IS AUTHORIZED, APART FROM THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## II.      INTRODUCTION

### A.      Background

On December 20, 2018 (the "**Commencement Date**"), the Debtor, a New Jersey corporation, filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").  Since the Commencement Date, the Debtor has remained in possession of its assets and management of its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**A joint hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") will be held on February 21, 2019, at 10:00 a.m., prevailing Eastern Time**, before the Honorable John K. Sherwood, United States Bankruptcy Judge, Courtroom 3D of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102.  The Bankruptcy Court has directed that objections, if any, to the adequacy of the Disclosure Statement and/or confirmation of the Plan must be filed and served so that they are received on or before February 14, 2019 at 5:00 p.m., prevailing Eastern Time.  The Combined Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Combined Hearing or at any subsequent adjourned Combined Hearing.

Attached as **Exhibit A** to this Disclosure Statement is a copy of the Plan.

## III.      GENERAL INFORMATION

### A.      Description of the Debtor

The Debtor is a corporation organized in 1987 under the laws of the State of New Jersey. The Debtor is owned by Michael and Julie Chang, with Michael holding 51% of the equity in the Debtor and Julie holding the remaining 49%.  The Debtor manufactures and imports fashion and active sunglasses, reading glasses, and accessories for men, women, and children.

### B.      The Debtor's Pre-Petition Indebtedness

### (i)      Secured Debt.

On June 8, 2012, M&T Bank, Manufacturers and Traders Trust Company ("**M&T**") extended a $10,000,000.00 secured, revolving, asset-based loan to the Debtor (the "**M&T Loan**").  The M&T Loan is evidenced and governed by, *inter alia*, a Standard LIBOR Grid Note (as amended, the "**Note**"), a Credit Agreement, as amended by that certain Amendment No. 1 to Credit Agreement dated October 7, 2014, and a General Security Agreement (the "**M&T Loan Documents**").  The obligations under the M&T Loan are secured by all or substantially all of the Debtor's assets.  The Debtor's obligations to M&T are guaranteed by Michael Chang and Julie Chang.

The Note has been amended from time to time.  On February 12, 2016, the Debtor and M&T entered into a Fifth Amended and Restated Line of Credit Note Standard LIBOR Grid

2

Note (LIBOR and Prime) in the principal amount of $20,000,000, which is the current Note in place.

In connection with the M&T Loan, M&T issued a $250,000 Irrevocable Standby Letter of Credit in favor of the landlord of the Debtor's South Hackensack, New Jersey facility (the "**Standby Letter of Credit**"). As of the Commencement Date, the landlord had not drawn upon the Standby Letter of Credit.

As of the Commencement Date, the Debtor owed M&T approximately $7.8 million with respect to the M&T Loan, including on account of the amounts committed under the Standby Letter of Credit. By letter dated August 29, 2018, M&T declared the M&T Loan to be in default. Following its notice of default, M&T ceased providing any additional funding to the Debtor under the revolving credit facility.

With no access to the M&T revolving credit line and limited liquidity, on November 30, 2018, and in the weeks leading up to the Commencement Date, the Debtor obtained loans from Three S Investments, LLC ("**Three S**"), an entity owned by Michael Chang, pursuant to which Three S extended loans to the Debtor aggregating $730,000 (the "**Three S Loans**"). The proceeds of the Three S Loans were used to meet the Debtor's operating expenses, including, without limitation, the payroll for November 30 and December 14, and rent for the month of December 2018. The Three S Loans are evidenced by, inter alia, a number of a Promissory Notes (the "**Three S Notes**") and a Second Lien Security Agreement (the "**Three S Security Agreement**"). The Three S Loans are expressly subordinate to the M&T Loan. To secure the obligations under the Three S Loans, the Debtor granted Three S a lien and security interest, expressly subordinate to M&T, in all or substantially all of the Debtor's assets.

As of the Commencement Date, the Three S Notes and the Three S Security Agreement, and all liens, claims, right, title and interest therein, were assigned to Five Comets, LLC ("**Five Comets**"), an entity in which Michael Chang and Julie Chang are each a member.

As of the Commencement Date, the obligations under the Three S Loans totaled $730,000, plus interest.

## (ii)    Unsecured Debt.

20.    As of the Commencement Date, the Debtor owed its trade creditors in excess of $5.4 million. The Debtor also owed insiders of the Debtor, including Michael Chang, approximately $1,363,000, which amounts are unsecured.

## C.    Pre-Petition Litigation

The Debtor is aware of the following lawsuits and arbitrations that were pending against the Debtor as of the Commencement Date:

(i)    <u>FXG International Inc. v. Icon Eyewear, Inc.</u>, Case No. 18-cv-00483-WES-LDA, United States District Court for the District of Rhode Island

>     (ii)    <u>Strouse vs. Icon Eyewear, Inc.</u>, Case No. 17-cv-06871-SDW-SCM, United States
>             District Court for the District of New Jersey
>
>     (iii)   <u>Icon Eyewear, Inc. v. AAA License Company, LLC</u>, Case No. BC707578,
>             Superior Court of the State of California for the County of Los Angeles

These lawsuits are stayed by the commencement of the Chapter 11 Case.

**D.    <u>Events Precipitating the Chapter 11 Filing</u>**

The Debtor operated profitably until 2017 when two one-time events—the loss of a major portion of its sales to its largest account and a change in the buying process of its third largest account—caused sales to drop precipitously. The Debtor's management at the time did not anticipate the lasting impact these events would have on the Debtor's sales and bottom line and, therefore, did not react quickly enough to these changes.

As a result of the Debtor's declining sales and distressed financial condition, in September of 2018, the Debtor's owners revamped the Debtor's management in an effort to stem losses. Among other initiatives, the Debtor's president was terminated and its former president, Bruce Bartley, was rehired as interim president to effectuate a turnaround. Prior to his retirement in late 2016, Bartley, a forty-year veteran of the industry, had spent ten years as the Debtor's president. Upon Bartley's return to the Debtor, he immediately undertook efforts to cut expenses and increase revenue by, among other things, (i) reducing redundancy and improving efficiencies in staffing, (ii) implementing more efficient inventory procedures that resulted in fewer hours being expended by warehouse staff, and (iii) working to secure incremental licenses invaluable to maintaining and growing sales. In total, these changes allowed the Debtor to reduce salary expense by approximately 20% year-over-year. Bartley also implemented a plan to eliminate unprofitable product conversions, re-engineer certain assembly functions, and expand product offerings in better quality goods targeting higher margin sales.

Even with the Debtor's efforts to implement an operational restructuring, it fell out of formula under the M&T Loan, prompting M&T to call the M&T Loan into default. On August 29, 2018, M&T sent the Debtor a Notice of Default, Demand for Payment and Reservation of Rights. Following the Notice of Default, M&T refused to make further advances under the Debtor's revolving credit facility, further constraining the Debtor as it attempted to revamp its business.

In the weeks leading up to the Commencement Date, the Debtor worked to address its liquidity crisis. In that regard, in October of 2018, the Debtor retained Getzler Henrich & Associates LLC ("**Getzler Henrich**"), a financial advisory firm, and charged Getzler Henrich with locating other sources of financing and working with the Debtor to address the Debtor's defaulted debt with M&T.

Although discussions with M&T were productive since the onset of the Debtor's financial distress, M&T would not agree to provide any advances to the Debtor or to subordinate its liens or debt to any lender that would otherwise have been prepared to extend a loan to the Debtor. Without adequate liquidity to continue operations, the Debtor obtained loans and commitments from Michael Chang and/or entities in which he is affiliated (capitalized by

Michael Chang, his family members, and his business associates), including Three S and Five Comets, to provide ongoing financing to the Debtor.  The critical funding provided by Michael Chang and his affiliates helped the Debtor avoid the need to immediately cease operations and liquidate its assets.

Notwithstanding the commitments of Three S and Five Comets, the Debtor still needed to restructure its debt and secure ongoing asset-based financing to support its operations.  Accordingly, the Debtor, with the assistance of its professionals, including Getzler Henrich, engaged in discussions with M&T aimed at being able to attract a new asset-based lender.  The Debtor has reached an agreement in principal with M&T to restructure and repay the M&T Loan, to be implemented through the Plan (as further described below in the section describing the treatment of the M&T Secured Claim).  The agreement with M&T includes a significant discount on the Debtor's obligation and is expressly contingent on the Debtor paying off the discounted portion of the M&T Loan on or before February 28, 2019, failing which the Debtor has no right to challenge M&T's request that the Court grant M&T immediate relief from the automatic stay to permit M&T to exercise remedies as permitted pursuant to the documents underlying the M&T Secured Claim, including the liquidation of its collateral, which includes all or substantially all of the Debtor's assets.

With the restructuring and discounted payment of the M&T Loan, and the continued implementation of its operating initiatives, the Debtor believes that its financial condition will continue to improve.  However, absent the chapter 11 to implement its operational and financial restructuring, the Debtor would have been forced to cease operations and liquidate its assets.  In a liquidation, the Debtor's creditors, other than M&T, would receive nothing on account of their claims.  The Debtor thus filed this chapter 11 case to preserve value, implement its restructuring, and emerge as a financially sound entity.  The Debtor believes that the chapter 11 filing was its best option for maximizing value for all stakeholders.

## IV.     THE CHAPTER 11 CASE

The following is a brief description of certain major events that have occurred during this Chapter 11 Case.

### A.     Debtor-in-Possession Financing

On the Commencement Date, Five Comets agreed, subject to approval by the Bankruptcy Court, to extend up to $2,270,000 in debtor-in-possession financing to the Debtor.  The proposed debtor-in-possession financing is subordinate in all respects to the M&T Loan, but senior in priority to the amounts initially advanced by Three S.

On the Commencement Date, the Debtor filed a *Motion for an Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing* [Docket No. 7] (the "**DIP Motion**") and on December 21, 2018, the Court granted the Debtor interim authority to obtain post-petition financing from Five

Comets.  The Debtor anticipates that such authority will be granted on a final basis at the scheduled January 16, 2019 hearing on the DIP Motion.

**B.      Committee Appointment**

On January 4, 2019, an official committee of unsecured creditors was appointed by the U.S. Trustee's Office.

**C.      Claims Process and Bar Date**

**1.      Bar Date**

The Bankruptcy Court fixed February 15, 2019 at 5:00 p.m. as the date by which Creditors have to file proofs of Claims in this Chapter 11 Case.  The deadline for filing a proof of Claim by a governmental unit (as defined by Section 101(27) of the Bankruptcy Code) is June 18, 2019.

**2.      Schedules and Statements**

The Debtor obtained an extension from the Bankruptcy Court to file its Statements of Financial Affairs, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Lists of Creditors and Equity Holders (collectively, the "**Schedules**") on or before January 17, 2019.  The Debtor anticipates that its Schedules will be filed on or before that date.

**3.      Section 341(a) Meeting of Creditors**

As of  January 15, 2019, a meeting of creditors pursuant to Section 341 of the Bankruptcy Code has neither been scheduled nor held.  On January 15, 2019, the Debtor filed a motion seeking, *inter alia*, an extension of time to and conditional waiver of the Bankruptcy Code's requirement to convene a Section 341(a) meeting.  Specifically, given the proposed confirmation timeline in this Chapter 11 Case, the Debtor proposes that the Court direct that the Section 341(a) meeting be deferred until confirmation of the Plan and, moreover, that such meeting need not be convened unless the Plan is not confirmed before the statutory deadline to convene such a meeting or such later date as may be determined by the Court.

**D.      Negotiation of Exit Financing**

The Debtor was presented with several term sheets for exit financing and has identified an Exit Financing Lender (as defined in the Plan) willing to extend a $5,000,000 secured loan (with seasonal extensions up to $8,000,000) on what the Debtor believes are the most favorable terms available.  On January 8, 2019, the Debtor filed a *Motion for Entry of an Order Authorizing It to (I) Enter into Letter Agreement in Connection with Anticipated Exit Financing and (II) Incur and Pay Related Fees and Expenses as Administrative Expenses* [Docket No. 24] in order to move forward with negotiations regarding the proposed Exit Financing Facility (as defined in the Plan).  On January 14, 2019, the Debtor filed the *Supplemental Declaration of Andrew Lebwohl in Support Of Debtor's Motion for Entry of an Order Authorizing It to (I) Enter Into Letter Agreement in Connection with Anticipated Exit Financing and (II) Incur and Pay*

6

*Related Fees and Expenses as Administrative Expenses* [Docket No. 39], attached to which is a term sheet with respect to the proposed Exit Financing Facility.  The motion is scheduled for a hearing on January 16, 2019.

The Debtor expects to use the proceeds from the Exit Financing Facility to finance its working capital needs in the ordinary course after it emerges from bankruptcy and to refinance certain existing indebtedness, including the amounts needed to satisfy the M&T Loan at the agreed-upon discounted amount on or before February 28, 2019.  The proceeds of the Exit Financing Facility are necessary to provide the Debtor cash to restructure the M&T Loan, fund the Debtor's plan of reorganization, and fund the Debtor's ongoing working capital needs upon emergence from chapter 11.

### E.    Retention of Counsel

On January 14, 2019, the Debtor filed an application with the Bankruptcy Court seeking the retention and employment of Cole Schotz  P.C. as its counsel and anticipates filing an application shortly after January 15, 2019 to retain Getzler Henrich as its financial advisor, in each case effective as of the Commencement Date.

## V.    SUMMARY OF THE PLAN

**THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE PLAN.  THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OF, OR A SUBSTITUTE FOR, THE PLAN.  CAPITALIZED TERMS USED BUT NOT OTHERWISE DEFINED HEREIN SHALL HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.**

### A.    Introduction

In formulating the Plan, the Debtor's goal was to find an acceptable method for satisfying the Claims of Creditors and Equity Interest Holders in accordance with the priorities and requirements of the Bankruptcy Code to allow the Debtor to emerge from chapter 11.  This Disclosure Statement was drafted with information in the possession of the Debtor and its proposed financial advisor, Getzler Henrich.

### B.    Solicitation Package

Each person entitled to vote to accept or reject the Plan is being provided with (1) this Disclosure Statement; (2) the Plan; (3) notice of the Confirmation Hearing and objection deadline; (4) an appropriate ballot to be used in voting to accept or reject the Plan; and (5) a pre-addressed return envelope.  Any person who receives this Disclosure Statement but does not receive a ballot, and who believes that he/she is entitled to vote to accept or reject the Plan or who believes he/she received an incorrect ballot, should contact Cole Schotz P.C. at the address or telephone number set forth on the first page of this Disclosure Statement.  To ensure your vote is counted you must (i) complete the Ballot, (ii) indicate your decision either to accept or reject the Plan in the boxes provided on the Ballot, and (iii) sign and return the Ballot to the address set

forth on the Ballot (please note that prepaid postage has not been included with the Ballot). BALLOTS SENT BY FACSIMILE TRANSMISSION ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Additional information regarding voting Claims under the Plan  can be found in that certain *Notice of (I) Conditional Approval of the Disclosure Statement; (II) Establishment of Record Date; (III) Scheduling of a Joint Hearing Date to Consider Adequacy of the Disclosure Statement and Confirmation of the Plan of Reorganization; (IV) Establishment of Procedures for Objecting to Adequacy of the Disclosure Statement and Confirmation of the Plan; and (V) Deadline for Voting on the Plan* and any Bankruptcy Court Order entered in connection with the *Debtor's Motion Pursuant to 11 U.S.C. § 105(d)(2)(B)(v) and (vi) for Entry of an Order (A) Conditionally Approving the Disclosure Statement for Solicitation Purposes Only; (B) Scheduling a Joint Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Debtor's Plan of Reorganization; (C) Approving Notice and Objection Procedures With Respect to the Adequacy of the Disclosure Statement and Plan Confirmation; (D) Fixing a Record Date for Voting and Procedures for Temporary Allowance of Claims; (E) Approving Solicitation Packages and Procedures for Distribution Thereof; (F) Approving the Form of Ballots and Establishment of Procedures for Voting on the Plan; and (G) Convening a Meeting of Creditors Pursuant to 11 U.S.C. § 341,* copies of which were served with this Disclosure Statement.

## C.    <u>Confirmation Procedure</u>

### 1.    <u>Combined Hearing</u>

A hearing before the Honorable John K. Sherwood, United States Bankruptcy Judge, has been scheduled for February 21, 2019 at 10:00 a.m. in Courtroom 3D of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102 to consider adequacy of the Disclosure Statement and confirmation of the Plan. The Combined Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Combined Hearing.

### 2.    <u>Procedure for Objections</u>

Any objection to the Disclosure Statement or confirmation of the Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim held by the objector.  Any such objection must be filed with the Bankruptcy Court and served on the Debtor's counsel so that it is received on or before February 14, 2019 at 5:00 p.m., prevailing Eastern Time.  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.

### 3.    <u>Requirements for Confirmation</u>

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of Section 1129 of the Bankruptcy Code.  Among the requirements for confirmation in this Chapter 11 Case are that the Plan be: (i) accepted by all impaired classes of Claims and Equity Interests or, if rejected by an impaired class, that the Plan "does not

8

discriminate unfairly" against and is "fair and equitable" with respect to such class; and (ii) feasible. The Bankruptcy Court must also find that:

- The Plan has classified claims and interests in a permissible manner;

- The Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

- The Plan has been proposed in good faith.

### 4.    Classification of Claims and Interests

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim or Equity Interest in a particular class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such class. The Plan creates separate classes to deal respectively with the M&T Secured Claim, the Second Lien Secured Claim, Other Secured Claims (each of which shall be deemed to be a separate subclass), Other Priority Claims, General Unsecured Claims, and Equity Interests. The Debtor believes that the Plan's classifications place substantially similar Claims or Equity Interests in the same class and that the Plan thus meets the requirements of Section 1122 of the Bankruptcy Code.

### 5.    Voting and Acceptance of the Plan

Classes 1 and 5 are "impaired" under the Plan such that they are entitled to vote thereon. Classes of Claims that are not "impaired" under the Plan are conclusively presumed to have accepted the Plan and thus are not entitled to vote thereon. Classes of Claims or Equity Interests that include insiders are not entitled to vote on the Plan.

#### a.    Votes Necessary for a Class to Accept the Plan.

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually voted voted in favor of the Plan.

#### b.    Votes Necessary to Confirm the Plan.

If impaired Classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired Class has accepted the Plan without counting the votes of any insiders within that Class and (2) all impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes.

### 6.    Best Interests Test

The "best interests" of creditors test requires that each holder of a claim or equity interest receive or retain under the plan property of a value that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. To determine what members of each impaired Class of Claims and Equity Interests would receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar amount

that a liquidation of the Debtor's assets would generate in the context of a chapter 7 liquidation sale.  The amount available for satisfaction of Claims and Equity Interests would consist of the proceeds resulting from the sale, reduced by the Claims of secured creditors, to the extent of the value of their collateral, and the costs and expenses of the liquidation.

The Debtor and its proposed financial advisor, Getzler Henrich, have evaluated the return to Holders of Claims under the Plan and have compared that anticipated return with what they believe will be realized if a forced liquidation occurs in a chapter 7.  The Debtor and Getzler Henrich believe that unsecured creditors will obtain a greater recovery under the Plan than what otherwise would be available if the assets of the Debtor were liquidated and distribution made pursuant to chapter 7 of the Bankruptcy Code.

The Debtor believes that in the event of a liquidation of its assets in a chapter 7, Holders of Allowed Class 2, Class 5, and Class 6 Claims would receive nothing on account of their respective Claims.

After consideration of the effects a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Creditors in this case, the Debtor believes the Plan satisfies the "best interests" of creditors test.

The Debtor's liquidation analysis is attached hereto as **Exhibit B**.  The liquidation analysis contains estimates of the amount of Claims that will ultimately be Allowed Claims. These estimates are based solely upon the Debtor's review of the its books and records.  No order has been entered to date estimating or otherwise fixing the amount of Claims in the projected amounts of Allowed Claims set forth in the liquidation analysis.  These estimates should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan.

Based upon the foregoing, the Debtor respectfully submits that the Creditors will fare far better under the proposed Plan than under a chapter 7 liquidation and urges all Creditors to vote to accept the Plan.

7.    **The Feasibility Test**

The "feasibility" test requires the Bankruptcy Court to find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor. There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough Cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  As set forth above, the Debtor has identified an Exit Financing Lender willing to extend a $5,000,000 secured loan (with seasonal extensions up to $8,000,000) on what it believes, in its business judgment, are favorable terms.  The Debtor expects to use the proceeds from the operation of its business and from the Exit Financing Facility to finance its working capital needs in the ordinary course after it emerges from bankruptcy and to refinance certain existing indebtedness, including the amounts needed to satisfy the M&T Loan at the agreed-upon discounted amount.  Additionally, the Debtor believes that with the $100,000.00 contribution

10

from the DIP Lender (to be used to fund the GUC Distribution Account), the availability provided under the DIP Financing Facility and from Cash Collateral, the Debtor will be able to demonstrate at the Confirmation Hearing that it is able to make all payments required to confirm the Plan.  The Debtor believes, therefore, that it has sufficient cash flow to make all payments and Distributions required under the Plan and that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization. Therefore, the Debtor believes that the Plan complies with the financial feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

### 8.      Other Requirements of Section 1129

The Debtor believes that the Plan meets all the other technical requirements of Section 1129 of the Bankruptcy Code, including that the Plan has been proposed in good faith.

### 9.      Cramdown.

The Bankruptcy Code contains a provision for confirmation of a plan, even if the plan is not accepted by all impaired classes, provided at least one impaired class of claims has voted to accept the plan.  These "cramdown" provisions are set forth in Section 1129(b) of the Bankruptcy Code.  According to this provision, the Plan may be confirmed if, in addition to satisfying other requirements of Section 1129 of the Bankruptcy Code, the Plan (i) "does not discriminate unfairly" and (ii) "is fair and equitable with respect to each class of claims or equity interests that is impaired under, and has not accepted, the Plan."

The requirement that the plan "not unfairly discriminate" means that a dissenting class must be treated equally with respect to other classes of equal rank.  A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of a similar value under a plan.  By establishing separate Classes for the Holders of each type of Claim and by treating each Holder of a Claim in each Class the same, the Debtor submits that the Plan does not "discriminate unfairly" with respect to any Class of Claims.

The "fair and equitable" standard, also known as the "absolute priority rule," has different meanings with respect to Secured and General Unsecured Claims.  With respect to Secured Claims, for a plan to be fair and equitable, the plan may provide (i) that the Holder of such Claim retain the Liens securing those Claims to the extent of the Allowed amount of such Claims and (ii) that such Holder receive on account of such Claim deferred Cash payments totaling at least the Allowed amount of such Claim of a value, as of the effective date of the plan, of at least the value of such Holder's interest in the Estate's interest in such property. Alternatively, a plan may provide for the realization by the Holders of Secured Claims of the indubitable equivalent of such Claims.

With respect to a Class of General Unsecured Claims, a plan can be fair and equitable if it provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the effective date, equal to the Allowed amount of the Claim, or if it provides that the Holder of a Claim or Equity Interest that is junior to the Claims of such Class

58450/0001-16779401v1

will not receive or retain any property under the plan on account of such junior Claim or Equity Interest.

**D.**    **Summary of Treatment**

The following table summarizes the classification and treatment of Claims and Equity Interests under the Plan.  For certain Classes of Claims, the actual amounts of Allowed Claims could exceed or could be less than the amount estimated by the Debtor in calculating the estimated recoveries set forth in the table below.  Accordingly, no representation can be or is being made with respect to whether the estimated percentage recoveries shown below will actually be realized by the Holders of Allowed Claim in any particular Class.

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| -- | Administrative Expense Claims | Except to the extent Holder agrees to a different treatment, Holders of Administrative Expense Claims shall be paid either (i) in full in Cash on the later of the Effective Date or date of allowance or (ii) in accordance with the terms and conditions relating to obligations incurred in the ordinary course of business during pendency of Chapter 11 Case. | 100% |
| -- | Priority Tax Claims | Except to the extent Holder agrees to a different treatment, Holders of Priority Tax Claims shall paid be either (i) in full in Cash on the later of the Effective Date or date of allowance or (ii) in regular installments with interest at the rate of six percent per annum over a term of five years from the Commencement Date. | 100% |
| Class 1 – M&T Secured Claim | Secured | M&T shall be paid $4,000,000, in full and final satisfaction of the M&T Compromised Secured Claim, on or before February 28, 2019. M&T shall remain fully secured and in senior position until the M&T Compromised Secured Claim is paid in full.  In the event the M&T Compromised Secured Claim is not paid in full on or before February 28, 2019, the Debtor will consent to M&T obtaining immediate relief from the automatic stay to proceed with the liquidation of the collateral securing the M&T Secured Claim.  If there is a draw under the M&T Letter of Credit on or before February 28, 2019, the Debtor shall | 70.8% |

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | prepay interest from the date of such draw until February 28, 2019 at M&T's prime rate plus 1% per annum and the Debtor must repay such draw, if any, in full on February 28, 2019. The provisions contained in the foregoing sentence shall not apply if the M&T Letter of Credit is not drawn prior to February 28, 2019, in which case the M&T Letter of Credit shall be retired upon the repayment of the M&T Compromised Secured Claim.  The M&T Deficiency Note shall be repaid subject to the following terms and conditions: (a)the M&T Deficiency Note shall accrue payment in kind interest capitalized at M&T's prime rate plus 1% per annum, commencing after February 28, 2019 and due on maturity of the M&T Deficiency Note; (b)for each calendar year period, first measured as December 31, 2019, through December 31, 2023, in which year-ending EBITDA exceeds $2 million (the "Excess EBITDA Threshold"), the Debtor shall make mandatory prepayment(s) equaling 50% of such amounts, if any, exceeding the Excess EBITDA Threshold, which amounts shall be applied to and reduce the principal due under the M&T Deficiency Note; (c)for the calendar years 2024-2026, the remaining balance will fully amortize monthly over 36 months; and (d)in the event a sale of substantially all the Reorganized Debtor's assets is consummated on or before February 28, 2021, the M&T Deficiency Note shall be discounted by 50% of the amount outstanding thereunder at the time of such sale, provided, however, that the M&T Deficiency Note must be paid on the date of such sale and provided, further that the discount described in this subsection (d) expires if the Debtor is sold after February 28, 2021.  The obligations of the M&T Deficiency Note shall be secured in all or substantially all of the Reorganized Debtor's assets, subordinated to the Exit Financing Facility only, and subject to such intercreditor or similar agreement with the | |

13

| **Class** | **Type of Claim or Equity Interest** | **Treatment** | **Estimated Recovery** |
|---|---|---|---|
| | | Exit Facility Lender on such terms and conditions acceptable to the Exit Facility Lender.  In addition to the payment of the M&T Compromised Secured Claim and the M&T Deficiency Note, the Debtor shall pay M&T the first proceeds of the Liquidation of Aged Inventory, net of cost (including the cost of the Debtor), up to $500,000.  For the avoidance of doubt, the balance, if any, of the proceeds of the Liquidation of Aged Inventory shall inure to the benefit of the Estate.  The remaining Claims of M&T, if any, shall constitute the M&T Unsecured Deficiency Claim and be entitled to treatment as a General Unsecured Claim as provided in Class 5. | |
| Class 2 – Second Lien Secured Claim | Secured | Allowed Class 2 Claims shall accrue interest at the rates set forth in the various loan documents underlying the Second Lien Secured Claim; provided, however, the DIP Lender shall waive any right to payment on the outstanding Second Lien Secured Claim on the Effective Date and shall not participate in any Distribution from the GUC Distribution Account on account of any outstanding Second Lien Secured Claim.  The DIP Lender shall retain its liens on the Second Lien Collateral on account of its outstanding Second Lien Secured Claim until the Effective Date at which point the Second Lien Secured Claim shall be converted into equity in the Reorganized Debtor and the DIP Lender's liens on the Second Lien Collateral shall be discharged. | N/A |
| Class 3 - Other Secured Claims | Secured | To the extent there are any Allowed Secured Claims in this Class (and excluding any Secured Claims that are subject of a different treatment as provided in a separate Secured Class), each such Claim shall be deemed to be a separate subclass.  At the option of the Reorganized Debtor, and except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in | 100% |

14

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | exchange for full and final satisfaction, settlement, release and discharge of each Allowed Other Secured Claim, a holder of an Allowed Class 3 Claim shall receive one of the following treatments, in the sole discretion of the Reorganized Debtor, in full and final satisfaction of such Allowed Other Secured Claim: (i) the Reorganized Debtor shall pay such Allowed Other Secured Claim in full in Cash including the payment of any interest required to be paid under Section 506(b) of the Bankruptcy Code; (ii) the Reorganized Debtor shall deliver the Collateral securing any such Allowed Other Secured Claim; (iii) the Reorganized Debtor shall otherwise treat any Allowed Other Secured Claim in any other manner such that the Claim shall be rendered unimpaired, including having its Claim reinstated, with any valid Lien securing such Allowed Other Secured Claim to survive and continue to secure such Collateral, or (iv) the Reorganized Debtor shall deliver the Net Proceeds realized by Reorganized Debtor from the disposition of the Collateral securing such Allowed Other Secured Claim.  The holder of a Claim in this Class 3 is not impaired and, therefore, not entitled to vote. | |
| Class 4 – Other Priority Claims | Priority Claims (other than Priority Tax Claims) | Holders of Allowed Class 4 Claims, if any, shall be paid within seven (7) Business Days from the Effective Date or as soon thereafter as is practicable, in full and final satisfaction of their Class 4 Claims, Cash equal to one hundred (100%) of their Allowed Priority Claims (but solely to the extent such Allowed Priority Claim is entitled to priority treatment in accordance with Section 507 of the Bankruptcy Code), with interest, if statutorily required by applicable non-bankruptcy law, at the applicable statutory rate as it accrues from the Commencement Date through the date of payment, provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in Section | 100% (on account of Priority portion of Claim) |

58450/0001-16779401v1

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | | 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to the Plan and the Holder of an Allowed priority Claim shall not assess or attempt to collect such penalty from the Debtor or its Estate.  Holders of Other Priority Claims may also hold General Unsecured Claims for that portion of their Allowed Claims that are not otherwise entitled to priority treatment in accordance with Section 507 of the Bankruptcy Code. | |
| Class 5 – General Unsecured Claims | General Unsecured Claims | Holders of Allowed Class 5 Claims shall be paid in satisfaction of their Class 5 Claims, (i) Cash equal to their Pro Rata share of the GUC Distribution Account on the later of (a) seven (7) Business Days after such General Unsecured Claim becomes an Allowed Claim or (b) thirty (30) days after the expiration of the Claims Objection Deadline, or as soon thereafter as is practicable; and (ii) Cash equal to their Pro Rata share of the proceeds, if any, of avoidance actions, which proceeds, if any, shall be paid within one year of the Effective Date. | 1.1% |
| Class 6 – Equity Interests | Equity Interest | The Holders of the Class 6 Equity Interests shall not receive any Distribution on account of such Equity Interests.  On the Effective Date, all Class 4 Equity Interests shall be cancelled, extinguished, and of no further force and effect. | 0% |

## E.    Classification of Claims and Interests and Their Treatment Under the Plan

The Plan classifies Claims and Equity Interests separately in accordance with the Bankruptcy Code and provides different treatment for different Classes of Claims and Equity Interests.  As described more fully below, the Plan provides, separately for each Class, that Holders of Claims and Equity Interests will receive various types of or no distributions under the Plan.

16

1.      <u>**Unclassified Claims**</u>

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in Sections 507(a)(2) or (a)(8) of the Bankruptcy Code are not to be designated in a class (collectively, the "**Unclassified Claims**").  Thus, the following against the Debtor shall be treated separately as Unclassified Claims:

(a)      <u>Administrative Expense Claims</u>.  Except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim seven (7) Business Days after the entry of a Final Order Allowing such Administrative Expense Claim, or as soon thereafter as is practicable.

(b)      <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Section 1930 of title 28 of the United States Code, to the extent unpaid through the Confirmation Date, shall be paid in Cash within seven (7) Business Days after the Effective Date.  From and after the Effective Date through the closing of the Chapter 11 Case, all fees payable pursuant to Section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Reorganized Debtor.

(c)      <u>DIP Credit Agreement Claims</u>.  The DIP Credit Agreement Claim shall remain superpriority Administrative Expense Claim against the Debtor's Estate and shall accrue PIK interest; <u>provided</u>, <u>however</u>, the DIP Lender waives any right to payment on the outstanding DIP Credit Agreement Claim on the Effective Date and shall not participate in any Distribution from the GUC Distribution Account on account of any outstanding DIP Credit Agreement Claim.  The DIP Lender shall retain its first priority liens on the DIP Collateral on account of its outstanding DIP Credit Agreement Claim until the Effective Date at which point the DIP Credit Agreement Claim shall be converted into equity in the Reorganized Debtor and the DIP Lender's liens on the DIP Collateral shall be discharged.

(d)      <u>Priority Tax Claims</u>.  Except as provided in the Plan, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Priority Tax Claim or upon such other terms as may be agreed upon by the holder of such Allowed Priority Tax Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree, or (at the election of the Debtor or the Reorganized Debtor) (b) over a period of five (5) years from the Commencement Date in equal monthly installments of principal plus interest at the rate of six percent per annum.

(e)      <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date through the closing of the Chapter 11 Case, all reasonable fees and expenses incurred by Professionals, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan, shall be paid in the ordinary course of business and without the necessity of approval by the Bankruptcy Court.

17

## VI.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; VOTING

**A.    Classification**

Claims, other than the Unclassified Claims set forth above, are classified for all purposes, including voting and distribution under the Plan as follows:

| CLASS | STATUS |
|---|---|
| Class 1 – M&T Secured Claim | Impaired |
| Class 2 – Second Lien Secured Claim | Non-Voting Insider |
| Class 3 -  Other Secured Claims | Unimpaired |
| Class 4 – Other Priority Claims | Unimpaired |
| Class 5 – General Unsecured Claims | Impaired |
| Class 6 – Equity Interests | Non-Voting Insider |

## VII.    TREATMENT OF CLAIMS

**A.    Treatment of Claims**

**1.    CLASS 1 – M&T SECURED CLAIM**

(a)    <u>Classification</u>.  Class 1 consists of the M&T Secured Claim.

(b)    <u>Impairment and Voting</u>.  Class 1 is impaired by the Plan.  Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

(c)    <u>Distributions</u>.  The M&T Secured Claim shall be satisfied pursuant to the following terms:

M&T shall be paid $4,000,000, in full and final satisfaction of the M&T Compromised Secured Claim, on or before February 28, 2019.  M&T shall remain fully secured and in senior position until the M&T Compromised Secured Claim is paid in full.  In the event the M&T Compromised Secured Claim is not paid in full on or before February 28, 2019, the Debtor will consent to M&T obtaining immediate relief from the automatic stay to proceed with the liquidation of the collateral securing the M&T Secured Claim.

If there is a draw under the M&T Letter of Credit on or before February 28, 2019, the Debtor shall prepay interest from the date of such draw until February 28, 2019 at M&T's prime rate plus 1% per annum and the Debtor must repay such draw, if any, in full on February 28, 2019. The provisions contained in the foregoing sentence shall not apply if the M&T Letter of Credit is not drawn prior to February 28, 2019, in which case the M&T Letter of Credit shall be retired upon the repayment of the M&T Compromised Secured Claim.

The M&T Deficiency Note shall be repaid subject to the following terms and conditions: (a)the M&T Deficiency Note shall accrue payment in kind interest capitalized at M&T's prime rate plus 1% per annum, commencing after February 28, 2019 and due on maturity of the M&T Deficiency Note; (b)for each calendar year period, first measured as December 31, 2019, through

18

December 31, 2023, in which year-ending EBITDA exceeds $2 million (the "Excess EBITDA Threshold"), the Debtor shall make mandatory prepayment(s) equaling 50% of such amounts, if any, exceeding the Excess EBITDA Threshold, which amounts shall be applied to and reduce the principal due under the M&T Deficiency Note; (c)for the calendar years 2024-2026, the remaining balance will fully amortize monthly over 36 months; and (d)in the event a sale of substantially all the Reorganized Debtor's assets is consummated on or before February 28, 2021, the M&T Deficiency Note shall be discounted by 50% of the amount outstanding thereunder at the time of such sale, provided, however, that the M&T Deficiency Note must be paid on the date of such sale and provided, further that the discount described in this subsection (d) expires if the Debtor is sold after February 28, 2021. The obligations of the M&T Deficiency Note shall be secured in all or substantially all of the Reorganized Debtor's assets, subordinated to the Exit Financing Facility only, and subject to such intercreditor or similar agreement with the Exit Facility Lender on such terms and conditions acceptable to the Exit Facility Lender.

In addition to the payment of the M&T Compromised Secured Claim and the M&T Deficiency Note, the Debtor shall pay M&T the first proceeds of the Liquidation of Aged Inventory, net of cost (including the cost of the Debtor), up to $500,000. For the avoidance of doubt, the balance, if any, of the proceeds of the Liquidation of Aged Inventory shall inure to the benefit of the Estate. The remaining Claims of M&T, if any, shall constitute the M&T Unsecured Deficiency Claim and be entitled to treatment as a General Unsecured Claim as provided in Class 5.

## 2.    CLASS 2 – SECOND LIEN SECURED CLAIM

(a)    Classification.  Class 2 consists of the Second Lien Secured Claim.

(b)    Impairment and Voting.  The Holders of the Class 2 Claims are Insiders and, therefore, are not entitled to vote to accept or reject the Plan. The Holders of Claims 2 Claims are impaired.

(c)    Distributions.  Allowed Class 2 Claims shall accrue interest at the rates set forth in the various loan documents underlying the Second Lien Secured Claim; provided, however, the DIP Lender shall waive any right to payment on the outstanding Second Lien Secured Claim on the Effective Date and shall not participate in any Distribution from the GUC Distribution Account on account of any outstanding Second Lien Secured Claim. The DIP Lender shall retain its liens on the Second Lien Collateral on account of its outstanding Second Lien Secured Claim until the Effective Date at which point the Second Lien Secured Claim shall be converted into equity in the Reorganized Debtor and the DIP Lender's liens on the Second Lien Collateral shall be discharged.

## 3.    CLASS 3 – OTHER SECURED CLAIMS

(a)    Classification.  Class 3 consists of any Secured Claims against the Debtor not otherwise classified, including, but not limited to, properly perfected Lien Claims.

(b)    <u>Impairment and Voting.</u>  Class 3 is unimpaired by the Plan. Holders of Class 3 Claims are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(c)    <u>Distributions.</u>  To the extent there are any Allowed Secured Claims in this Class (and excluding any Secured Claims that are subject of a different treatment as provided in a separate Secured Class), each such Claim shall be deemed to be a separate subclass.  At the option of the Reorganized Debtor, and except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Other Secured Claim, a holder of an Allowed Class 3 Claim shall receive one of the following treatments, in the sole discretion of the Reorganized Debtor, in full and final satisfaction of such Allowed Other Secured Claim: (i) the Reorganized Debtor shall pay such Allowed Other Secured Claim in full in Cash including the payment of any interest required to be paid under Section 506(b) of the Bankruptcy Code; (ii) the Reorganized Debtor shall deliver the Collateral securing any such Allowed Other Secured Claim; (iii) the Reorganized Debtor shall otherwise treat any Allowed Other Secured Claim in any other manner such that the Claim shall be rendered unimpaired, including having its Claim reinstated, with any valid Lien securing such Allowed Other Secured Claim to survive and continue to secure such Collateral, or (iv) the Reorganized Debtor shall deliver the Net Proceeds realized by Reorganized Debtor from the disposition of the Collateral securing such Allowed Other Secured Claim.  The holder of a Claim in this Class 3 is not impaired and, therefore, not entitled to vote.

4.    **<u>CLASS 4 – OTHER PRIORITY CLAIMS</u>**

(a)    <u>Classification.</u>  Class 4 consists of other priority Claims against the Debtor pursuant to Section 507 of the Bankruptcy Code.  The Debtor does not believe that other priority Claims exist and has created this class in an abundance of caution.

(b)    <u>Impairment and Voting.</u>  Class 4 is unimpaired by the Plan. Holders of Class 4 Claims are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(c)    <u>Distributions.</u>  Holders of Allowed Class 4 Claims, if any, shall be paid within seven (7) Business Dates from the Effective Date or as soon thereafter as is practicable, in full and final satisfaction of their Class 4 Claims, Cash equal to one hundred (100%) of their Allowed Claims (but solely to the extent such Allowed Priority Claim is entitled to priority treatment in accordance with Section 507 of the Bankruptcy Code), with interest, if statutorily required by applicable non-bankruptcy law, at the applicable statutory rate as it accrues from the Commencement Date through the date of payment, <u>provided</u>, <u>however</u>, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to the Plan and the Holder of an Allowed priority Claim shall not assess or attempt to collect such penalty from the Debtor or its Estate.

5.      **CLASS 5 – GENERAL UNSECURED CREDITORS**

(a)      Classification.  Class 5 consists of General Unsecured Claims against the Debtor.

(b)      Impairment and Voting.  Class 5 is impaired by the Plan.  Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

(c)      Distributions.  Holders of Allowed Class 5 Claims shall be paid in satisfaction of their Class 5 Claims, (i) Cash equal to their Pro Rata share of the GUC Distribution Account on the later of (a) seven (7) Business Days after such General Unsecured Claim becomes an Allowed Claim or (b) thirty (30) days after the expiration of the Claims Objection Deadline, or as soon thereafter as is practicable; and (ii) Cash equal to their Pro Rata share of the proceeds, if any, of avoidance actions, which proceeds, if any, shall be paid within one year of the Effective Date.

6.      **CLASS 6 – EQUITY INTERESTS**

(a)      Classification.  Class 6 consists of the Equity Interests in the Debtor.

(b)      Impairment and Voting.  The Holders of the Class 4 Equity Interests are Insiders and, therefore, are not entitled to vote to accept or reject the Plan.  The Holders of the Class 6 Equity Interests are impaired and deemed to reject the Plan.

(c)      Treatment.  The Holders of the Class 6 Equity Interests shall not receive any Distribution on account of such Equity Interests.  On the Effective Date, all Class 4 Equity Interests shall be cancelled, extinguished, and of no further force and effect.

B.      **Modification of Treatment of Claims and Interests**

The Debtor reserves the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case may be, is being adversely affected.

VIII.      **PROVISIONS REGARDING THE DISBURSING AGENT**

A.      **Appointment of the Disbursing Agent**

On the Effective Date, the Reorganized Debtor shall be appointed and thereafter serve as the Disbursing Agent under the Plan.  The Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties as Disbursing Agent  unless otherwise ordered by the Bankruptcy Court.

58450/0001-16779401v1

### B.    Rights and Powers of the Reorganized Debtor As Disbursing Agent

The Reorganized Debtor shall, in addition to any powers and authority specifically set forth in other provisions of the Plan, be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval or action under any applicable law, order, rule, or regulation, (ii) establish, as necessary, disbursement accounts from which to make Distributions; (iii) make Distributions in accordance with the Plan, (iv) object to Claims, as appropriate; (v) employ and compensate professionals to represent it with respect to its responsibilities, and (vi) exercise such other powers as may be vested in the Reorganized Debtor by Order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions hereof.  The Reorganized Debtor may take any and all actions which it deems reasonably necessary or appropriate to vigorously defend against any Claim, including, without limitation, the right to: (i) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts, and consultants; and (ii) enter into a settlement agreement or agreements, provided that such settlement is entered into by the Reorganized Debtor in good faith.

## IX.    PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A.    Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

### B.    Fractional Dollars; No *De Minimis* Distributions.

Notwithstanding anything contained in the Plan to the contrary, (i) the Reorganized Debtor shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down and (ii) the Reorganized Debtor shall have no duty to make a Distribution on account of any Allowed Claim if (a) it determines, in the reasonable exercise of its discretion, that the amount available for Distribution at such time is insufficient to justify the cost of effecting the Distribution, in which case such Distributions shall be deferred to the next Distribution date or (b) the amount of a Distribution is $100 or less, in which case no such Distribution shall be made unless a request therefor is made in writing to the Reorganized Debtor no later than twenty (20) days after the Effective Date.

### C.    Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**D.**    **Objections to and Resolutions of Claim.**

The Reorganized Debtor shall have the right to file objections to Disputed Claims after the Effective Date.  All objections shall be litigated to entry of a Final Order; provided, however, that the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections, without approval of the Bankruptcy Court.

**E.**    **Objection Deadline**

The Reorganized Debtor shall file and serve any objection to any Claims no later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

**F.**    **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

**G.**    **Escrow of Cash Distributions on Account of Disputed Claims**

On any date that Distributions are to be made under the terms of the Plan, the Reorganized Debtor shall deposit in one or more segregated accounts Cash or property equal to the maximum amount of Cash or property that would be distributed on such date on account of all then-Disputed Claims as if each such Disputed Claim were an Allowed Claim, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expense Claims pursuant to Sections 503 and 507 of the Bankruptcy Code and (ii) any amount due but not payable on the Effective Date on account of Administrative Expense Claims pursuant to Section 503 and 507 of the Bankruptcy Code).  The Reorganized Debtor shall also segregate any interest, dividends, or proceeds of such Cash.  Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

**H.**    **Distribution After Allowance**

Within the later of 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Reorganized Debtor shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of such Claim is then-entitled with respect to such Claim, as Allowed by the Bankruptcy Court.

**I.**    **Investment of Segregated Cash and Property**

To the extent practicable, the Reorganized Debtor may invest any Cash or other property segregated on account of a Disputed Claim, Undeliverable Distribution, or any proceeds thereof (i) in a manner intended to yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Reorganized Debtor shall be under no obligation to so invest such Cash or

proceeds and shall have no liability to any party for any investment made or any failure to invest such Cash, other property, or proceeds.

**J.**       **Delivery of Distributions**

Except as provided in Sections 6.11 and 6.12 of the Plan, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Reorganized Debtor after the filing of any such proof of Claim; or (3) at the address reflected in the Schedules if no proof of Claim is filed and neither the Debtor nor the Reorganized Debtor has received a written notice of a change of address.

**K.**       **Undeliverable Distributions**

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtor as undeliverable, no further Distribution shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any Holder or an Allowed Claim.  Undeliverable Distributions shall remain in the possession of the Reorganized Debtor until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant to Section 6.12 of the Plan.

**L.**       **Unclaimed Distributions**

Any Cash or other property to be distributed under the Plan shall revert to the Reorganized Debtor if it is not claimed (an "**Unclaimed Distribution**") by the Holder entitled thereto before the later of (i) three months from the date the Unclaimed Distribution in question is issued or (ii) thirty days after an Order allowing the Claim of that Holder becomes a Final Order, at which time such Holder's Claim shall be deemed to be reduced to zero and such Unclaimed Distribution shall revert to the Debtor.

**M.**       **Set-Off**

The Reorganized Debtor may, but shall not be required to, set-off against, or recoup from, the Distributions to be made pursuant to the Plan any and all Claims, obligations, rights, causes of action, and/or liabilities of any nature that the Reorganized Debtor may hold against the Holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any Claims, obligations, rights, causes of action, and/or liabilities that the Reorganized Debtor has or may have against such Holder.

58450/0001-16779401v1

## X.    MEANS FOR EXECUTION OF THE PLAN

**A.    Means for Implementation of the Plan**

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

1.    Procurement of Exit Financing. The Debtor shall close on the Exit Financing Facility by executing and delivering to the Exit Financing Lender the Exit Financing Loan Documents.

2.    Funding of GUC Distribution Account.  The GUC Distribution Account shall be funded through a contribution from the DIP Lender.

3.    New Equity.  On the Effective Date, the DIP Credit Agreement Claim and Second Lien Secured Claim shall be converted into equity in the Reorganized Debtor.

4.    Cancellation of Equity Interests.  On the Effective Date, all existing Equity Interests, including without limitation, all Class 4 Equity Interests shall be cancelled, extinguished, and of no further force and effect, without further approval or action under any applicable agreement, law, order, rule, or regulation.

5.    Liquidation of Aged Inventory.  The Debtor shall pay M&T the first proceeds of the Liquidation of Aged Inventory, net of cost (including the cost of the Debtor), up to $500,000.  The balance, if any, of the proceeds of the Liquidation of Aged Inventory shall inure to the benefit of the Estate or the Reorganized Debtor, as the case may be.

**B.    Reorganized Debtor.**

1.    Issuance of New Securities.  On the Effective Date, the Reorganized Debtor shall issue new membership or equity interests without further approval or action under applicable law, order, rule, or regulation. The issuance of the new membership or equity interests shall be exempt from registration under applicable securities laws pursuant to Section 1145(a) of the Bankruptcy Code.

2.    Continued Operations.  The Reorganized Debtor will continue to operate post-Effective Date.

3.    Corporate Existence of the Debtor.  As of the Effective Date, the Reorganized Debtor shall maintain the Debtor's good standing as a corporation under the laws of the State of New Jersey.

4.    Management. On and after the Effective Date, the Reorganized Debtor shall be managed by the Debtor's pre-petition directors and officers or as otherwise determined by the Reorganized Debtor.

58450/0001-16779401v1

5.    <u>Insurance Preservation</u>.  On the Effective Date, the Reorganized Debtor shall assume all insurance policies issued or providing coverage at any time to the Debtor and all agreements related thereto, as amended, modified, extended, renewed, restated, or replaced.  Nothing in the Plan, the Disclosure Statement, the Confirmation Order or otherwise shall diminish or impair the validity or enforceability of any insurance policies or that may cover or backstop Claims against the Debtor, the Reorganized Debtor, or their respective employees, officers, directors, members, shareholders, or any other Person.

6.    <u>Implementation Obligations</u>.  The Reorganized Debtor shall take or cause to be taken all corporate actions necessary or appropriate to implement all of the provisions of, and to consummate, the Plan and any documents required to be executed to implement the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval or action under any applicable law, order, rule, or regulation.  On the Effective Date, the appropriate officers of the Reorganized Debtor are authorized and directed to execute and to deliver all agreements, documents, and instruments contemplated by the Plan in the name and on behalf of the Reorganized Debtor.

7.    <u>Revesting of Property in the Reorganized Debtor</u>.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor will be vested with all of the property of the Debtor's Estate, wherever situated, free and clear of all Claims, Liens and Equity Interests, and may operate its business and may use, acquire, or dispose of its assets free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action will be preserved and retained solely for the Reorganized Debtor's commencement, prosecution, use, and benefit, except to the extent otherwise expressly provided in the Plan or in the Confirmation Order.

## C.    <u>Corporate Action; Effectuating Documents; Further Transactions.</u>

On the Effective Date, all matters and actions provided for under the Plan that otherwise required or would require approval of the director or officers of the Debtor or the Reorganized Debtor shall be deemed to have been authorized and effective in all respects as provided in the Plan and shall be taken without any requirement for further action by the director or officers of the Debtor or the Reorganized Debtor.  The Debtor and the Reorganized Debtor are authorized to execute, deliver, file, and/or record such contracts, instruments, releases, and/or other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

58450/0001-16779401v1

D. **Recording Documents.**

Each and every federal, state, and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful, or appropriate to effectuate, implement, and/or consummate the transactions contemplated by the Plan including, but not limited to, any and all notices of satisfaction, release, and/or discharge of any Lien, Claim, or encumbrance not expressly preserved by the Plan and the Confirmation Order.

E. **Creditors' Committee.**

As of the Effective Date, the Creditors' Committee shall be automatically dissolved and all of its members, Professionals, and agents shall have no further rights or duties arising from such membership, provided, however, that the Creditors' Committee shall exist after such date solely with respect to its final application for payment of an Administrative Expense Claim and the hearing regarding the same.

## XI.    DISCHARGE AND INJUNCTION

A. **Discharge of Claims and Termination of Equity Interests.**

Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests (other than those Claims and Equity Interests that are unimpaired or retained under the Plan) of any nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests. Upon the Effective Date, the Debtor and the Reorganized Debtor shall be deemed discharged and released under Sections 524 and 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Equity Interests (other than those Claims and Equity Interests that are not impaired or reinstated under the Plan), including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

B. **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Except as otherwise expressly provided in the Plan or necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, all Entities that have held, hold, or may hold Claims against or Equity Interest in the Debtor, are permanently enjoined, from and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or Order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv)

asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.

## C.    <u>Exculpation</u>

The Exculpated Parties shall not be liable to any Holder of any Claim or Equity Interest for any act or omission occurring in connection with, or arising out of, the Chapter 11 Case, the Plan, the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order of the Bankruptcy Court.  The Exculpated Parties shall in all respects be entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

## XII.    <u>CAUSES OF ACTION</u>

## A.    <u>Preservation of Causes of Action</u>

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date all Causes of Action shall vest in the Reorganized Debtor.  The Reorganized Debtor may enforce, litigate, settle, or compromise any and all Causes of Action; the Reorganized Debtor may also decline to do any of the foregoing.  The failure of the Debtor to specifically list any Claim, right of action, suit, proceeding, or other Cause of Action in the Plan does not, and shall not be deemed to, constitute a waiver or release of same.  Moreover, the Reorganized Debtor shall retain the right to pursue any and all such Claims, rights of actions, suits, proceedings, or other Causes of Action in its sole and absolute discretion.  No preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims, rights of action, suits, proceedings, or other Causes of Action upon or after the Confirmation or consummation of the Plan.

58450/0001-16779401v1

## XIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Rejection of Executory Contracts and Unexpired Leases**The Debtor intends to serve a notice on parties to Executory Contracts and Unexpired Leases substantially in the form attached as Exhibit 1 (the "**Assumption Notice**") to the Plan, reflecting the Debtor's intention to assume the Executory Contracts or Unexpired Leases in connection with the Plan and indicating that the Cure Obligation shall be asserted against the Debtor or the Reorganized Debtor, as applicable, on the dated set for objections to the Plan.  In addition, the Assumption Notice will indicate that, in the event of any assumption dispute with respect to the Cure Obligation pertaining to the assumption of an Executory Contracts or Unexpired Leases, the Bankruptcy Court shall make a determination on the dispute before the assumption is effective or the Debtor may settle any dispute without any further notice to any party or any action, Order, or approval of the Bankruptcy Court.  On the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Assumption Notice shall be deemed rejected.  The Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

**B.    Payments Related to the Assumption of Executory Contracts and Unexpired Leases.**

Any Cure Obligation associated with an Executory Contract or Unexpired Lease shall be satisfied in connection with the assumption of same.  Assumption of an Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Cure Obligations, Claims, or defaults, whether monetary or nonmonetary, arising thereunder at any time before the Effective Date,  including, but not limited to defaults of provisions restricting the change- in-control or ownership interest composition of the Debtor or other bankruptcy-related defaults.

**C.    Deadline for Filing Proofs of Claim Relating to Rejected Executory Contracts and Unexpired Leases**

If the rejection by the Debtor, pursuant to the Plan or otherwise, of an Executory Contract or Unexpired Lease gives rise to a Claim, a proof of Claim must be filed with the Bankruptcy Court and served upon the Clerk and the Debtor's counsel or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of the Confirmation Order and (ii) other notice that the Executory Contract or Unexpired Lease has been rejected.  Any proof of Claim not filed and served within such time periods shall be forever barred from assertion against the Debtor and its Estate.  Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under the Plan.

**D.    Post-Petition Contracts and Leases.**

Any and all contracts and leases entered into by the Debtor after the Commencement Date, and any Executory Contracts and Unexpired Leases assumed by the Reorganized Debtor, may be performed post-Effective Date by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

## XIV.    CONDITIONS TO THE EFFECTIVE DATE

### A.    Conditions Precedent to the Effective Date

The Plan shall not become effective unless and until the following conditions are satisfied or waived:

1.    The Confirmation Order shall have become a Final Order on or before February 28, 2019.

2.    The Debtor and the Exit Financing Lender shall have closed on the Exit Financing Facility on or before February 28, 2019.

3.    The DIP Lender contribution to the GUC Distribution Account shall have been funded.

### B.    Effect of Failure of Conditions

If each condition precedent to the Effective Date has not been satisfied or duly waived on or before the twenty-first day after the Confirmation Date, then upon motion by any party-in-interest (such motion having been made before such time that all of the conditions precedent to the Effective Date have been satisfied or duly waived) and upon notice to such parties-in-interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived by the Debtor before the Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is vacated pursuant to Section 11.2 of the Plan, the Plan shall be deemed null and void in all respects including, without limitation, the discharge of Claims pursuant to Section 1141 of the Bankruptcy Code, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor or (ii) prejudice in any manner the rights of the Debtor.

### C.    Waiver of Conditions Precedent to Effective Date

The Debtor may waive any or all of the conditions precedent to the Effective Date, in whole or in part, and without notice to any party or an Order of the Bankruptcy Court, provided, however, the Debtor shall provide the Creditors' Committee with written notice of any such waiver and an opportunity to consent, which consent shall not be unreasonably withheld.  The failure to satisfy or to waive any condition precedent may be asserted by the Debtor regardless of the circumstances giving rise to such situation (including any action or inaction by the Debtor).  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

58450/0001-16779401v1

**D.**    **Simultaneous Transactions.**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

## XV.    RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1. To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2. To hear and determine any disputes regarding the assumption of any Executory Contracts and Unexpired Leases, including with respect to any dispute relating to Cure Obligations;

3. To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

4. To issue any and all Orders in aid of the execution and consummation of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

5. To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

6. To hear and determine all Fee Applications;

7. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order;

8. To hear and determine matters concerning federal, state, and local taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

9. To hear any other matter not inconsistent with the Bankruptcy Code;

10. To enter a final decree closing the Chapter 11 Case;

11. To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

12. To decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any motions and/or applications involving the Debtor that may be pending on the Effective Date;

13.     To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan or the Confirmation Order, except as otherwise provided in the Plan;

14.     To determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

16.     To resolve disputes concerning Disputed Claims, thereto, or the administration thereof; and

17.     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Date, and the combined hearing on the approval of the Disclosure Statement and the confirmation of the Plan for the purpose of determining whether a Claim or Equity Interest is disallowed or discharged hereunder or for any other purpose.

## XVI.    MISCELLANEOUS PROVISIONS

**A.    Headings.**

Headings are used in the Plan for convenience and reference only, they shall not limit or otherwise affect the provisions of the Plan, and they shall not constitute a part of the Plan for any other purpose.

**B.    Exhibits/Schedules.**

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full therein.

**C.    Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the Holders of Claims and Equity Interests, and their respective successors and assigns.

**D.    Successors and Assigns.**

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

58450/0001-16779401v1

E.      **Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of such jurisdiction.

F.      **Amendment or Modification of the Plan.**

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided, however, that (i) the Plan, as altered, amended, or modified, must satisfy the conditions of Sections 1122 and 1123 of the Bankruptcy Code and (ii) the Debtor must comply with Section 1125 of the Bankruptcy Code.

G.      **Severability.**

In the event the Bankruptcy Court determines, on or before the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be deemed invalid, void, or unenforceable with respect to the Holder of such Claim or Equity Interest as to which the provision is determined to be invalid, void, or unenforceable only.  The invalidity, voidability, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

H.      **Revocation or Withdrawal of the Plan.**

The Debtor reserves the right to revoke or withdraw the Plan on or before the Confirmation Date.  If the Debtor revokes or withdraws the Plan on or before the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or to prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

I.      **Notices.**

All notices, requests, and/or demands to or upon the Debtor must be made in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      Icon Eyewear, Inc.
      c/o David M. Bass, Esq.
      Cole Schotz P.C.
      Court Plaza North
      25 Main Street
      Hackensack, New Jersey 07601
      (201) 489-3000
      (201) 489-1536 Facsimile

**J.**     **Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Debtor and the Reorganized Debtor (including in its capacity as Disbursing Agent) shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

**K.**     **Filing of Additional Documents.**

On or before substantial consummation of the Plan, the Reorganized Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**L.**     **No Admissions.**

Notwithstanding anything contained in the Plan to the contrary, nothing therein shall be deemed as an admission by any Person or Entity with respect to any matter set forth therein.

**M.**     **Reservation of Rights.**

Except as expressly set forth therein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, nor the making of statements and provisions contained therein, nor the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of (i) the Debtor, the Holders of Claims or Equity Interests, or other parties-in-interest or (ii) any Holder of a Claim or other party-in-interest before the Effective Date.

**N.**     **Payment Dates.**

If any Distribution or act under the Plan is required to be made or falls on a date which is not a Business Day, then the making of such Disbursement or the performance of such act may be completed on the following Business Day and shall be deemed to have been timely completed.

**O.**     **Inconsistency.**

In the event any inconsistency exists between or among the Plan, the Disclosure Statement, and/or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

**P.**     **Section 1125(e) Good Faith Compliance.**

The Debtor and its Professionals shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

**Q.**     **Compromise of Controversies.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in this Chapter 11 Case.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and of all other compromises and settlements provided for in the Plan and the Chapter 11 Case, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, and all Holders of Claims and Equity Interests against the Debtor.

**R.**     **Closing of Case.**

Upon substantial consummation of the Plan, the Reorganized Debtor may move for entry of a final decree to close the Chapter 11 Case and may request such other Order or Orders as may be just.

**XVII.     ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN.**

**A.**     **Liquidation Under Chapter 7.**

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which a trustee(s) would be elected or appointed to liquidate the assets of the Debtor.  A discussion of the effect that a chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth above and in the attached liquidation analysis.  The Debtor believes that liquidation under chapter 7 would result in no distribution to unsecured creditors.

**B.**     **Alternative Plan of Reorganization.**

If the Plan is not confirmed, the Debtor (or any other party-in-interest if the exclusivity period has expired or been terminated) could attempt to formulate a different plan of reorganization.  Such a plan might involve either a reorganization or an orderly liquidation of the Debtor and its assets.  However, in the opinion of the Debtor, the Plan represents the best alternative to protect the interests of creditors and parties-in-interest and enables the Debtor to successfully emerge from chapter 11, preserve its business, maintain jobs ,and allow Creditors and Equity Interest Holders to realize the highest recoveries under the circumstances.  Also, the proposer of any alternative plan could not compel M&T to accept a discount on account of the M&T Secured Claim or compel the DIP Lender to provide the funding and commitments being provided in connection with the Plan, as such provisions are strictly voluntary.

In a chapter 11 liquidation, the Debtor's assets would be sold in an orderly fashion, although a trustee would not be appointed unless ordered by the Bankruptcy Court.  Accordingly, certain creditors would receive greater recoveries than in a chapter 7 liquidation, and a chapter 11 liquidation may be preferable to a chapter 7 liquidation.  Notwithstanding the foregoing, the Debtor believes that a liquidation under chapter 11 is a much less attractive

alternative than confirmation of the Plan because creditors will receive a greater return under the Plan.

## XVIII.    RISK FACTORS

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan.  You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in its entirety, and in consultation with your own advisors.  Based on the analysis of the risks summarized below, the Debtor believes that the Plan is viable and will meet all requirements of confirmation:

**A.    Business Risks.**

There can be no assurance that the industry conditions under which the Debtor operates will enable it to successfully implement new programs, achieve the revenues, or obtain the margins thereon that the Debtor relied upon to project its future business prospects.

Additionally, it is uncertain what effect, if any, this Chapter 11 Case may have had upon the Debtor's continued operations.  Some entities are uncomfortable doing business with a company that has sought protection under the Bankruptcy Code.  Accordingly, it is uncertain whether these proceedings might have an adverse effect on the Debtor's relationships with customers and/or employees.

**B.    Certain Federal Income Tax Consequences**

**THE FOLLOWING DISCUSSION IS A SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE DEBTOR AND HOLDERS OF CLAIMS OR EQUITY INTERESTS BASED ON THE TAX LAWS IN EFFECT AS OF THE DATE OF THIS DISCLOSURE STATEMENT.  THIS DISCUSSION DOES NOT ADDRESS THE PARTICULAR FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO CERTAIN TYPES OF TAXPAYERS SUBJECT TO SPECIAL TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (SUCH AS LIFE INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS AND TAXPAYERS WHO ARE NOT U.S. DOMESTIC CORPORATIONS OR CITIZENS OR RESIDENTS OF THE UNITED STATES), NOR DOES IT DISCUSS ANY ASPECT OF STATE, LOCAL, FOREIGN OR OTHER TAX LAWS THAT MAY BE APPLICABLE TO PARTICULAR TAXPAYERS. THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND INTERESTS MAY VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.**

**AS OF THE DATE OF THIS DISCLOSURE STATEMENT, NO RULING HAS BEEN OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.  THE DEBTOR HAS NOT OBTAINED AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX CONSEQUENCES DESCRIBED BELOW.  THEREFORE, NO REPRESENTATION IS BEING MADE WITH RESPECT TO THE PARTICULAR TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN AS TO ANY CREDITOR. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO**

36

**CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE TAX
CONSEQUENCES OF THE PLAN.**

**THE FOREGOING IS A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR
CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE TAX
CONSEQUENCES OF THE PLAN COULD BE COMPLEX AND, IN MANY AREAS,
UNCERTAIN.  THEREFORE, EACH HOLDER OF A CLAIM IS STRONGLY URGED
NOT TO RELY ON THE FOREGOING AND TO CONSULT HIS OR HER OWN TAX
ADVISOR REGARDING SUCH CONSEQUENCES.**

**C.      Bankruptcy Risks.**

If Administrative Expense Claims, Priority Tax Claims, or Other Priority Claims are
determined to be Allowed Claims in amounts greatly exceeding the Debtor's estimates, or if
Holders of Allowed Administrative Expense Claims do not consent to the payment in accordance
with the Plan terms, there may be insufficient Cash on the Effective Date to pay such Claims,
and the Plan may not become effective.

Additionally, the Distributions and recoveries estimated in this Disclosure Statement are
based on the Debtor's estimates of Allowed Claims.  The Debtor projects that the Claims
asserted against it will be resolved and reduced to an amount that approximates its estimates and
will seek an Order or Orders from the Bankruptcy Court estimating the dollar amount of certain
Allowed and Disputed Claims.  There can be no assurance that such assumptions will prove
accurate.  Moreover, if and to the extent that the Debtor has underestimated the amount of
Allowed Claims or reserves for Disputed Claims, the Debtor could be required to redirect Cash
to such Disputed Cash reserves, resulting in a potential dilution of available Cash.  The Debtor
reserves the right to object to the amount or classification of any Claim.

[remainder of page left intentionally blank]

58450/0001-16779401v1

## XIX.    CONCLUSION

It is extremely important for you to exercise your right to vote on the Plan, if you are entitled to do so.  A Ballot is being provided to parties entitled to vote on the Plan simultaneously herewith for voting purposes, together with a copy of the Order establishing the hearing date to consider confirmation of the Plan.

The Plan provides a distribution on account of Administration Expense Claims, Priority Tax Claims, and General Unsecured Claims in excess of what would be expected in the event of a chapter 7 liquidation.  **AS SUCH, THE DEBTOR SUBMITS THAT THE PLAN IS FAIR AND EQUITABLE AND IN THE BEST INTEREST OF ALL HOLDERS OF CLAIMS AND INTERESTS AND URGES ALL SUCH HOLDERS THAT ARE ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

Respectfully submitted,

Dated:  January 15, 2019

ICON EYEWEAR, INC.

By:  Brian Liston
Senior Vice President of Finance

38

# **EXHIBIT A**

The Plan

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>ICON EYEWEAR, INC.,[1]<br><br>        Debtor-in-Possession. | Chapter 11<br><br>Case No. 18-34902 (JKS) |

## ICON EYEWEAR, INC.'S PLAN OF REORGANIZATION

Dated: January 15, 2019

---

[1] The last four digits of the Debtor's federal identification number are 1657.

# TABLE OF CONTENTS

**Page**

**ARTICLE I** DEFINITIONS AND CONSTRUCTION OF TERMS ..............................................1

**ARTICLE II** TREATMENT OF UNCLASSIFIED CLAIMS .....................................................11

**ARTICLE III** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................13

**ARTICLE IV** TREATMENT OF CLAIMS AND EQUITY INTERESTS................................13

**ARTICLE V** PROVISIONS REGARDING THE DISBURSING AGENT ...............................19

**ARTICLE VI** PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ............20

**ARTICLE VII** IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN .........24

**ARTICLE VIII** DISCHARGE AND INJUNCTION ..................................................................27

**ARTICLE IX** CAUSES OF ACTION .......................................................................................29

**ARTICLE X** EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................30

**ARTICLE XI** CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................31

**ARTICLE XII** RETENTION OF JURISDICTION....................................................................33

**ARTICLE XIII** MISCELLANEOUS PROVISIONS.................................................................35

i

Icon Eyewear, Inc., the within debtor and debtor-in-possession, proposes the following

Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.[2]

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions.  As used herein, the following terms have the meanings specified below,

unless the context otherwise requires:

1.1.    Administrative Expense Bar Date means the Business Day that is 30 days after

the Effective Date.

1.2.    Administrative Expense Claim means any right to payment constituting a cost or

expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the

Bankruptcy Code including, without limitation, any actual and necessary costs and expenses of

preserving the Estate, all compensation and reimbursement of expenses to the extent Allowed by

the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees or charges

assessed against the Estate under Section 1930 of chapter 123 of Title 28 of the United States

Code.

1.3.    Allowed means, with reference to any Claim or Equity Interest, any Claim or

Equity Interest, proof of which was timely and properly filed or, if no proof of Claim or Equity

Interest was filed, which has been or hereafter is listed by the Debtor in its Schedules, as

liquidated in amount and not disputed or contingent and, in each case, as to which either (i) no

objection to allowance has been interposed within the applicable period fixed by the Plan, the

Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) to the extent an

---

[2] Capitalized terms used herein shall have the meanings ascribed to them in Article I of the Plan.

objection to allowance has been interposed, such Claim has been allowed, in whole or in part, by a Final Order.

    1.4.   <u>Assumption Notice</u> shall have the meaning ascribed to it in Section 10.1 of the Plan.

    1.5.   <u>Bankruptcy Code</u> means Title 11 of the United States Code, as same may be amended from time to time.

    1.6.   <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of New Jersey which has jurisdiction over the Chapter 11 Case, or if such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court or adjunct thereof as exercises jurisdiction over the Chapter 11.

    1.7.   <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code and any Local Rules of the Bankruptcy Court, as same may be amended from time to time.

    1.8.   <u>Bar Date</u> means February 15, 2019 at 5:00 p.m., the date fixed by the Bankruptcy Court for a Holder of a Claim or Equity Interest (other than a Governmental Unit) to file a proof of Claim or Equity Interest, as the case may be.

    1.9.   <u>Business Day</u> means any day other than a Saturday, Sunday, or any other day on which commercial banks in New Jersey are required or authorized to be closed by law or executive order.

    1.10.   <u>Cash</u> means legal tender of the United States of America and equivalents thereof.

    1.11.   <u>Causes of Action</u> means all Claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Bankruptcy Code or other federal or state law,

2

including, without limitation, any causes of action arising under Article 5 of the Bankruptcy

Code, including but not limited to those Causes of Action set forth on Schedule 1 hereto.

1.12.    <u>Chapter 11 Case</u> means the case under chapter 11 of the Bankruptcy Code

commenced by the Debtor, styled *In re Icon Eyewear, Inc*,. bearing Case No. 18-34902 (JKS),

and currently pending in the Bankruptcy Court.

1.13.    <u>Claim</u> shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.14.    <u>Class</u> means any group of substantially similar Claims or Equity Interests

classified by the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

1.15.    <u>Clerk</u> means the clerk of the Bankruptcy Court.

1.16.    <u>Commencement Date</u> means December 20, 2018, the date on which the Debtor

commenced the Chapter 11 Case.

1.17.    <u>Confirmation</u> means entry by the Bankruptcy Court of the Confirmation Order.

1.18.    <u>Confirmation Date</u> means the date on which the Clerk enters the Confirmation

Order on the Docket.

1.19.    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to

consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such

hearing may be adjourned or continued from time to time.

1.20.    <u>Confirmation Order</u> means the Order of the Bankruptcy Court confirming the

Plan pursuant to Section 1129 of the Bankruptcy Code.

1.21.    <u>Creditor</u> means any Person that is the Holder of a Claim against the Debtor.

1.22.    <u>Creditors' Committee</u> means the Official Committee of Unsecured Creditors

appointed by the United States Trustee in this Chapter 11 Case pursuant to Section 1102 of the

Bankruptcy Code, as it may be constituted from time to time.

3

1.23.    <u>Cure Obligation</u> means any obligation required to be paid or honored in connection with assumption of an Executory Contract or Unexpired Lease pursuant to Section 365 of the Bankruptcy Code, including (i) the cure of any non-monetary default to the extent required by law and as may be agreed upon by the parties or ordered by the Bankruptcy Court and (ii) with respect to monetary defaults, the Distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court in an amount equal to all unpaid monetary obligations under such Executory Contract or Unexpired Lease, <u>provided</u>, <u>however</u>, that the Debtor is only obligated to satisfy Cure Obligations to the extent such Cure Obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.24.    <u>Debtor</u> means Icon Eyewear, Inc..

1.25.    <u>Debtor-in-Possession</u> means the Debtor in its capacity as a debtor-in-possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.26.    <u>DIP Collateral</u> means the collateral securing the DIP Lender's liens pursuant to the DIP Credit Agreement.

1.27.    <u>DIP Credit Agreement</u> means that Debtor-in-Possession Loan and Security Agreement dated as of December 21, 2018 by and between the DIP Lender and the Debtor, as the same may be amended, modified, ratified, extended, renewed, restated or replaced.

1.28.    <u>DIP Credit Agreement Claim</u> means any Claim arising under or related to the DIP Credit Agreement.

1.29.    <u>DIP Financing</u> means the financing facility provided to the Debtor pursuant to the terms of the DIP Credit Agreement and the DIP Order.

4

1.30.    <u>DIP Financing Proceeds</u> means the funds advanced to the Debtor pursuant to the DIP Credit Agreement.

1.31.    <u>DIP Lender</u> means Five Comets, LLC.

1.32.    <u>DIP Order</u> meants that certain *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay* dated January [__], 2019 and docked in the Chapter 11 Case as Docket No. [__].

1.33.    <u>Disbursing Agent</u> means the Reorganized Debtor, in its capacity as disbursing agent pursuant to Article V of the Plan.

1.34.    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.35.    <u>Disputed</u> means any Claim which is listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part in accordance with Article VI of the Plan.

1.36.    <u>Distribution</u> means any distribution to the Holders of Allowed Claims.

1.37.    <u>Docket</u> means the docket in the Chapter 11 Case maintained by the Clerk.

1.38.    <u>Effective Date</u> means the date on which the conditions specified in Article XI of the Plan have been satisfied or waived.

1.39.    <u>Entity</u> means an entity as defined in Section 101(15) of the Bankruptcy Code.

58450/0001-16751642v2

1.40.    <u>Equity Interests</u> means all equity interests in the Debtor including, but not limited to, all issued, unissued, authorized, or outstanding membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

1.41.    <u>Estate</u> means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

1.42.    <u>Exculpated Parties</u> means the Debtor, the Reorganized Debtor (including in its capacity as the Disbursing Agent), the Creditors' Committee, and their respective predecessors, successors, and assigns and current and former officers, directors, managers, shareholders, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, <u>provided</u>, <u>however</u>, that tthe individual members comprising the Creditors' Committee shall not benefit from the exculpation provisions contained herein.

1.43.    <u>Executory Contract</u> means any executory contract as of the Commencement Date between the Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Plan.

1.44.    <u>Exit Financing Facility</u> means that $5,000,000 secured loan (with seasonal extensions up to $8,000,000) extended by the Exit Financing Lender, pursuant to the Exit Financing Loan Documents.

1.45.    <u>Exit Financing Lender</u> means Gerber Finance Inc. or any affiliate of Gerber Finance Inc.

1.46.    <u>Exit Financing Loan Documents</u> mean any and all documents entered into in connection with the Exit Financing Facility, as the same may be amended, modified, ratified, extended, renewed, restated, or replaced.

1.47.    <u>Fee Application</u> means an application by a Professional for compensation or reimbursement of costs and expenses relating to services rendered from the Commencement Date through and including the Effective Date.

1.48.    <u>Final Order</u> means an Order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing are pending.

1.49.    <u>General Unsecured Claim</u> means any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Commencement Date and that is not a Secured Claim, Administrative Expense Claim, or other priority Claim.

1.50.    <u>Governmental Unit</u> shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.51.    <u>GUC Distribution Account</u> means a segregated account consisting of $100,000.00 contributed by the DIP Lender and maintained by the Debtor for the benefit of Holders of General Unsecured Claims to be disbursed pursuant to this Plan.

1.52.    <u>Holder</u> means the beneficial holder of any Claim or Equity Interest.

1.53.    <u>Lien</u> shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.54.    <u>Liquidation of Aged Inventory</u> means the Debtor's liquidation of certain aged inventory, which the Debtor and M&T estimate at approximately 1,500,000 units, pursuant to the M&T Settlement, with an M&T approved consultant or a third-party via auction or by private sale.

7

1.55.  <u>M&T</u> means M&T Bank, Manufacturers and Traders Trust Company.

1.56.  <u>M&T Compromised Secured Claim</u> means the compromised $4,000,000 Claim indefeasibly due to M&T, in Cash, on or before February 28, 2019 pursuant to the M&T Settlement.

1.57.  <u>M&T Deficiency Note</u> means that $1,000,000 deficiency note, fully guaranteed by Michael and Julie Chang, payable to M&T, in Cash, on or before December 31, 2026, pursuant to the M&T Settlement.

1.58.  <u>M&T Letter of Credit</u> means that the $250,000 letter of credit issued by M&T on behalf of the Debtor.

1.59.  <u>M&T Secured Claim</u> means the approximately $7.8 million secured Claim of M&T predicated upon that certain secured, revolving, asset-based loan M&T extended to the Debtor on or around June 8, 2012, as memorialized by a Standard LIBOR Grid Note, a Credit Agreement, and a General Security Agreement, as collectively amended and/or restated from time to time.

1.60.  <u>M&T Settlement</u> means the settlement agreement reached by the Debtor and M&T as implemented in accordance with Section 4.1(A) of the Plan.

1.61.  <u>M&T Unsecured Deficiency Claim</u> means the remaining claim, if any, of M&T after the anticipated payment of the M&T Compromised Secured Claim less (i) the M&T Deficiency Note and (ii) any amount received on account of the Liquidation of Aged Inventory, which shall be a General Unsecured Claim and included in Class 5 and entitled to vote in Class 5.

1.62.  <u>Order</u> means an order or judgment of the Bankruptcy Court as entered on the Docket.

1.63.   <u>Other Secured Claim</u> shall mean any and all Secured Claims, against the Debtor

not otherwise classified, including, but not limited to, properly perfected Lien Claims and

specifically excluding the Secured Claims of M&T and the Second Lien Secured Claim.

1.64.   <u>Person</u> shall have the meaning set forth in Section 101(41) of the Bankruptcy

Code.

1.65.   <u>Plan</u> means this chapter 11 plan of reorganization including, without limitation,

all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the

same may be altered, amended, or modified from time to time through the Confirmation Date.

1.66.   <u>Priority Tax Claim</u> means any Claim for taxes against the Debtor entitled to

priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.67.   <u>Professional</u> means any professional person employed in the Chapter 11 Case

pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order

of the Bankruptcy Court.

1.68.   <u>Pro Rata</u> means the proportion that an Allowed Claim in a particular Class bears

to the aggregate amount of Allowed Claims in that Class.

1.69.   <u>Reorganized Debtor</u> means the Debtor or any successors thereto, by merger,

consolidation, or otherwise, from and after the Effective Date.

1.70.   <u>Schedules</u> means the schedules of assets and liabilities, the list of Holders of

Equity Interests, and the statements of financial affairs filed by the Debtor under Section 521 of

the Bankruptcy Code and Bankruptcy Rule 1007, along with any and all amendments and

modifications thereto through the Confirmation Date.

58450/0001-16751642v2

1.71.    Second Lien Collateral means that collateral pledged pursuant to that certain

Second Lien Security Agreement dated November 30, 2018 by and between the Debtor and

Three S.

1.72.    Second Lien Secured Claim means the approximately $730,000 secured Claim

predicated upon (i) that certain $300,000 Promissory Note dated November 30, 2018 by and

between the Debtor and Three S, (ii) that certain $35,000 Promissory Note dated December 11,

2018 by and between the Debtor and Three S, (iii) that certain $200,000 Promissory Note dated

December 14, 2018 by and between the Debtor and Three S, (iv) that certain $165,000

Promissory Note dated December 19, 2018 by and between the Debtor and Three S, (v) that

certain $30,000 Promissory Note dated December 20, 2018 by and between the Debtor and

Three S, and (vi) that certain Second Lien Security Agreement dated November 30, 2018 by and

between the Debtor and Three S, all as subsequently assigned to the DIP Lender pursuant to that

certain Assignment Agreement dated December 20, 2018 by and between Three S and the DIP

Lender.

1.73.    Secured Claim means a Claim Allowed pursuant to Section 506(a) of the

Bankruptcy Code.

1.74.    Three S means Three S Investments, LLC.

1.75.    Unclaimed Distribution shall have the meaning ascribed to it in Section 6.12 of

the Plan.

1.76.    Unexpired Lease means any unexpired lease as of the Commencement Date

between the Debtor and any other Person or Persons, specifically excluding contracts and

agreements entered into pursuant to this Plan.

58450/0001-16751642v2

1.77.    Interpretation; Application of Definitions and Rules of Construction.

Wherever from the context it appears appropriate, each term stated in either the singular

or the plural shall include both the singular and the plural and pronouns stated in the

masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.

Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan

are to the respective Section in, Article of, Schedule to, or Exhibit to the Plan.  The words

"herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the

Plan as a whole and not to any particular section, subsection, or clause contained in the

Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall

apply to the construction of the Plan.  Any term used in the Bankruptcy Code and used

but not defined herein shall have the meaning ascribed to it in the Bankruptcy Code.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1.    Administrative Expense Bar Date.  Requests for payment of Administrative

Expense Claims must be filed no later than the Administrative Expense Bar Date.  Holders of

Administrative Expense Claims that do not file requests for the allowance and payment thereof

on or before the Administrative Expense Bar Date shall forever be barred from asserting such

Administrative Expense Claims against the Debtor or its Estate.

2.2.    Administrative Expense Claims.  Except to the extent that any entity entitled to

payment of an Allowed Administrative Expense Claim agrees to a different treatment, each

Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to

such Allowed Administrative Expense Claim seven (7) Business Days after the entry of a Final

Order Allowing such Administrative Expense Claim, or as soon thereafter as is practicable.

11

2.3.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Section 1930 of title 28 of the United States Code, to the extent unpaid through the Confirmation Date, shall be paid in Cash within seven (7) Business Days after the Effective Date.  From and after the Effective Date through the closing of the Chapter 11 Case, all fees payable pursuant to Section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Reorganized Debtor.

2.4.    <u>DIP Credit Agreement Claims</u>.  The DIP Credit Agreement Claim shall remain superpriority Administrative Expense Claim against the Debtor's Estate and shall accrue PIK interest; <u>provided</u>, <u>however</u>, the DIP Lender waives any right to payment on the outstanding DIP Credit Agreement Claim on the Effective Date and shall not participate in any Distribution from the GUC Distribution Account on account of any outstanding DIP Credit Agreement Claim.  The DIP Lender shall retain its first priority liens on the DIP Collateral on account of its outstanding DIP Credit Agreement Claim until the Effective Date at which point the DIP Credit Agreement Claim shall be converted into equity in the Reorganized Debtor and the DIP Lender's liens on the DIP Collateral shall be discharged.

2.5.    <u>Priority Tax Claims</u>.  Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Priority Tax Claim or upon such other terms as may be agreed upon by the holder of such Allowed Priority Tax Claim and the Debtor prior to the Effective Date and the Reorganized Debtor following the Effective Date might otherwise agree, or (at the election of the Debtor or the

12

Reorganized Debtor) (b) over a period of five (5) years from the Commencement Date in equal

monthly installments of principal plus interest at the rate of six percent per annum.

2.6.    <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date

through the closing of the Chapter 11 Case, all reasonable fees and expenses incurred by

Professionals, including, without limitation, those fees and expenses incurred in connection with

the implementation and consummation of the Plan, shall be paid in the ordinary course of

business and without the necessity of approval by the Bankruptcy Court.

## **ARTICLE III**

## **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

3.1.    Claims, other than Administrative Expense Claims, are classified for all purposes,

including voting, Confirmation and Distribution pursuant to the Plan, as follows:

| **CLASS** | **STATUS** |
|---|---|
| Class 1 – M&T Secured Claim | Impaired |
| Class 2 – Second Lien Secured Claim | Non-Voting Insider |
| Class 3 -  Other Secured Claims | Unimpaired |
| Class 4 – Other Priority Claims | Unimpaired |
| Class 5 – General Unsecured Claims | Impaired |
| Class 6 – Equity Interests | Non-Voting Insider |

## **ARTICLE IV**

## **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

4.1.    Treatment of Claims.

(A)    **CLASS 1 – M&T SECURED CLAIM**

(i)    <u>Classification</u>.  Class 1 consists of the M&T Secured Claim.

(ii)    <u>Impairment and Voting</u>.  Class 1 is impaired by the Plan.  Holders of

Class 1 Claims are entitled to vote to accept or reject the Plan.

13

(iii)    <u>Distributions</u>.  The M&T Secured Claim shall be satisfied pursuant to the

following terms:

M&T shall be paid $4,000,000, in full and final satisfaction of the M&T Compromised

Secured Claim, on or before February 28, 2019.   M&T shall remain fully secured and in senior

position until the M&T Compromised Secured Claim is paid in full.  In the event the M&T

Compromised Secured Claim is not paid in full on or before February 28, 2019, the Debtor will

consent to M&T obtaining immediate relief from the automatic stay to proceed with the

liquidation of the collateral securing the M&T Secured Claim.

If there is a draw under the M&T Letter of Credit on or before February 28, 2019, the

Debtor shall prepay interest from the date of such draw until February 28, 2019 at M&T's prime

rate plus 1% per annum and the Debtor must repay such draw, if any, in full on February 28,

2019. The provisions contained in the foregoing sentence shall not apply if the M&T Letter of

Credit is not drawn prior to February 28, 2019, in which case the M&T Letter of Credit shall be

retired upon the repayment of the M&T Compromised Secured Claim.

The M&T Deficiency Note shall be repaid subject to the following terms and conditions:

(a) the M&T Deficiency Note shall accrue payment in kind interest capitalized at M&T's prime

rate plus 1% per annum, commencing after February 28, 2019 and due on maturity of the M&T

Deficiency Note; (b) for each calendar year period, first measured as December 31, 2019,

through December 31, 2023, in which year-ending EBITDA exceeds $2 million (the "Excess

EBITDA Threshold"), the Debtor shall make mandatory prepayment(s) equaling 50% of such

amounts, if any, exceeding the Excess EBITDA Threshold, which amounts shall be applied to

and reduce the principal due under the M&T Deficiency Note; (c) for the calendar years 2024-

2026, the remaining balance will fully amortize monthly over 36 months; and (d) in the event a

sale of substantially all the Reorganized Debtor's assets is consummated on or before

February 28, 2021, the M&T Deficiency Note shall be discounted by 50% of the amount

outstanding thereunder at the time of such sale, provided, however, that the M&T Deficiency

Note must be paid on the date of such sale and provided, further that the discount described in

this subsection (d) expires if the Debtor is sold after February 28, 2021.  The obligations of the

M&T Deficiency Note shall be secured in all or substantially all of the Reorganized Debtor's

assets, subordinated to the Exit Financing Facility only, and subject to such intercreditor or

similar agreement with the Exit Facility Lender on such terms and conditions acceptable to the

Exit Facility Lender.

In addition to the payment of the M&T Compromised Secured Claim and the M&T

Deficiency Note, the Debtor shall pay M&T the first proceeds of the Liquidation of Aged

Inventory, net of cost (including the cost of the Debtor), up to $500,000.  For the avoidance of

doubt, the balance, if any, of the proceeds of the Liquidation of Aged Inventory shall inure to the

benefit of the Estate.  The remaining Claims of M&T, if any, shall constitute the M&T

Unsecured Deficiency Claim and be entitled to treatment as a General Unsecured Claim as

provided in Class 5.

  **(B)**  **CLASS 2 – SECOND LIEN SECURED CLAIM**

  (i)  <u>Classification.</u>  Class 2 consists of the Second Lien Secured Claim.

  (ii)  <u>Impairment and Voting.</u>  The Holders of the Class 2 Claims are Insiders

and, therefore, are not entitled to vote to accept or reject the Plan.  The Holders of Claims 2

Claims are impaired.

  (iii)  <u>Distributions.</u>  Allowed Class 2 Claims shall accrue interest at the rates set

forth in the various loan documents underlying the Second Lien Secured Claim; provided,

however, the DIP Lender shall waive any right to payment on the outstanding Second Lien

Secured Claim on the Effective Date and shall not participate in any Distribution from the GUC

Distribution Account on account of any outstanding Second Lien Secured Claim.  The DIP

Lender shall retain its liens on the Second Lien Collateral on account of its outstanding Second

Lien Secured Claim until the Effective Date at which point the Second Lien Secured Claim shall

be converted into equity in the Reorganized Debtor and the DIP Lender's liens on the Second

Lien Collateral shall be discharged.

     **(C)**     **CLASS 3 – OTHER SECURED CLAIMS**

     (i)     <u>Classification.</u>  Class 3 consists of any Secured Claims against the Debtor

not otherwise classified, including, but not limited to, properly perfected Lien Claims.

     (ii)     <u>Impairment and Voting.</u>  Class 3 is unimpaired by the Plan.  Holders of

Class 3 Claims are conclusively presumed to have accepted the Plan and, therefore, are not

entitled to vote to accept or reject the Plan.

     (iii)     <u>Distributions.</u>  To the extent there are any Allowed Secured Claims in this

Class (and excluding any Secured Claims that are subject of a different treatment as provided in

a separate Secured Class), each such Claim shall be deemed to be a separate subclass.  At the

option of the Reorganized Debtor, and except to the extent that a holder of an Allowed Other

Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction,

settlement, release and discharge of each Allowed Other Secured Claim, a holder of an Allowed

Class 3 Claim shall receive one of the following treatments, in the sole discretion of the

Reorganized Debtor, in full and final satisfaction of such Allowed Other Secured Claim: (i) the

Reorganized Debtor shall pay such Allowed Other Secured Claim in full in Cash including the

payment of any interest required to be paid under Section 506(b) of the Bankruptcy Code; (ii) the

Reorganized Debtor shall deliver the Collateral securing any such Allowed Other Secured Claim; (iii) the Reorganized Debtor shall otherwise treat any Allowed Other Secured Claim in any other manner such that the Claim shall be rendered unimpaired, including having its Claim reinstated, with any valid Lien securing such Allowed Other Secured Claim to survive and continue to secure such Collateral, or (iv) the Reorganized Debtor shall deliver the Net Proceeds realized by Reorganized Debtor from the disposition of the Collateral securing such Allowed Other Secured Claim.  The holder of a Claim in this Class 3 is not impaired and, therefore, not entitled to vote.

**(D)    CLASS 4 – OTHER PRIORITY CLAIMS**

(i)    Classification.  Class 4 consists of other priority Claims against the Debtor pursuant to Section 507 of the Bankruptcy Code.  The Debtor does not believe that other priority Claims exist and has created this class in an abundance of caution.

(ii)    Impairment and Voting.  Class 4 is unimpaired by the Plan.  Holders of Class 4 Claims are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(iii)    Distributions.  Holders of Allowed Class 4 Claims, if any, shall be paid within seven (7) Business Days from the Effective Date or as soon thereafter as is practicable, in full and final satisfaction of their Class 4 Claims, Cash equal to one hundred (100%) of their Allowed Priority Claims (but solely to the extent such Allowed priority Claim is entitled to priority treatment in accordance with Section 507 the Bankruptcy Code), with interest, if statutorily required by applicable non-bankruptcy law, at the applicable statutory rate as it accrues from the Commencement Date through the date of payment, provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Plan and the

17

Holder of an Allowed priority Claim shall not assess or attempt to collect such penalty from the Debtor or its Estate.

**(E)**  **CLASS 5 – GENERAL UNSECURED CREDITORS**

(i)  <u>Classification</u>.  Class 5 consists of General Unsecured Claims against the Debtor.

(ii)  <u>Impairment and Voting</u>.  Class 5 is impaired by the Plan.  Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

(iii)  <u>Distributions</u>.  Holders of Allowed Class 5 Claims shall be paid in satisfaction of their Class 5 Claims, (i) Cash equal to their Pro Rata share of the GUC Distribution Account on the later of (a) seven (7) Business Days after such General Unsecured Claim becomes an Allowed Claim or (b) thirty (30) days after the expiration of the Claims Objection Deadline, or as soon thereafter as is practicable; and (ii) Cash equal to their Pro Rata share of the proceeds, if any, of avoidance actions, which proceeds, if any, shall be paid within one year of the Effective Date.

**(F)**  **CLASS 6 – EQUITY INTERESTS**

(i)  <u>Classification.</u>  Class 6 consists of the Equity Interests in the Debtor.

(ii)  <u>Impairment and Voting.</u>  The Holders of the Class 4 Equity Interests are Insiders and, therefore, are not entitled to vote to accept or reject the Plan.  The Holders of the Class 6 Equity Interests are impaired and deemed to reject the Plan.

(iii)  <u>Distributions.</u>  The Holders of the Class 6 Equity Interests shall not receive any Distribution on account of such Equity Interests.  On the Effective Date, all Class 4 Equity Interests shall be cancelled, extinguished, and of no further force and effect.

18

4.2.    <u>Modification of Treatment of Claims and Equity Interests</u>.  The Debtor reserves the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case may be, is being adversely affected.

4.3.    <u>Cramdown</u>.  If any class of Claims fails to accept the Plan in accordance with Section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class.

## <u>ARTICLE V</u>

## <u>PROVISIONS REGARDING THE DISBURSING AGENT</u>

5.1.    <u>Appointment of the Disbursing Agent</u>.  On the Effective Date, the Reorganized Debtor shall be appointed and thereafter serve as the Disbursing Agent under the Plan.  The Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties as Disbursing Agent  unless otherwise ordered by the Bankruptcy Court.

5.2.    <u>Rights and Powers of the Reorganized Debtor As Disbursing Agent</u>.  The Reorganized Debtor shall, in addition to any powers and authority specifically set forth in other provisions of the Plan, be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval or action under any applicable law, order, rule, or regulation, (ii) establish, as necessary, disbursement accounts from which to make Distributions;

(iii) make Distributions in accordance with the Plan, (iv) object to Claims, as appropriate;

(v) employ and compensate professionals to represent it with respect to its responsibilities, and

(vi) exercise such other powers as may be vested in the Reorganized Debtor by Order of the

Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary

and proper to implement the provisions hereof.  The Reorganized Debtor may take any and all

actions which it deems reasonably necessary or appropriate to vigorously defend against any

Claim, including, without limitation, the right to: (i) exercise any and all judgment and discretion

with respect to the manner in which to defend against or settle any Claim, including, without

limitation, the retention of professionals, experts, and consultants; and (ii) enter into a settlement

agreement or agreements, provided that such settlement is entered into by the Reorganized

Debtor in good faith.

## <u>ARTICLE VI</u>

## <u>PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN</u>

6.1.    <u>Method of Payment</u>.  Unless otherwise expressly agreed, in writing, all Cash

payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

6.2.    <u>Fractional Dollars; No *De Minimis* Distributions</u>.  Notwithstanding anything

contained herein to the contrary, (i) the Reorganized Debtor shall not be required to make

Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of

a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a

rounding of such fraction to the nearest whole dollar (up or down), with half dollars being

rounded down and (ii) the Reorganized Debtor shall have no duty to make a Distribution on

account of any Allowed Claim if (a) it determines, in the reasonable exercise of its discretion,

that the amount available for Distribution at such time is insufficient to justify the cost of

effecting the Distribution, in which case such Distributions shall be deferred to the next

Distribution date or (b) the amount of a Distribution is $100 or less, in which case no such

Distribution shall be made unless a request therefor is made in writing to the Reorganized Debtor

no later than twenty (20) days after the Effective Date.

6.3.    Allocation of Plan Distributions Between Principal and Interest.  To the extent

that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness

and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal

amount of the Claim first and then, to the extent the consideration exceeds the principal amount

of the Claim, to accrued but unpaid interest.

6.4.    Objections to and Resolutions of Claims.  The Reorganized Debtor shall have the

right to file objections to Disputed Claims after the Effective Date.  All objections shall be

litigated to entry of a Final Order; provided, however, that the Reorganized Debtor shall have the

authority to compromise, settle, otherwise resolve, or withdraw any objections, without approval

of the Bankruptcy Court.

6.5.    Objection Deadline.  The Reorganized Debtor shall file and serve any objection to

any Claims no later than sixty (60) days after the Effective Date or such later date as may be

approved by the Bankruptcy Court.

6.6.    No Distribution Pending Allowance.  Notwithstanding any other provision of the

Plan, no payment or Distribution of Cash or other property shall be made with respect to any

portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final

Order.

6.7.    Escrow of Cash Distributions on Account of Disputed Claims.  On any date that

Distributions are to be made under the terms of the Plan, the Reorganized Debtor shall deposit in

one or more segregated accounts Cash or property equal to the maximum amount of Cash or

property that would be distributed on such date on account of all then-Disputed Claims as if each

such Disputed Claim were an Allowed Claim, including, but not limited to (i) Disputed Claims

that may be entitled to treatment as Administrative Expense Claims pursuant to Sections 503 and

507 of the Bankruptcy Code and (ii) any amount due but not payable on the Effective Date on

account of Administrative Expense Claims pursuant to Section 503 and 507 of the Bankruptcy

Code). The Reorganized Debtor shall also segregate any interest, dividends, or proceeds of such

Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust

for the benefit of the Holders of all such Disputed Claims pending determination of their

entitlement thereto.

      6.8.    Distribution After Allowance. Within the later of 15 days after the entry of a

Final Order resolving an objection to a Disputed Claim, the Reorganized Debtor shall distribute

all Cash or other property, including any interest, dividends, or proceeds thereof, to which a

Holder of such Claim is then-entitled with respect to such Claim, as Allowed by the Bankruptcy

Court.

      6.9.    Investment of Segregated Cash and Property. To the extent practicable, the

Reorganized Debtor may invest any Cash or other property segregated on account of a Disputed

Claim, Undeliverable Distribution, or any proceeds thereof (i) in a manner intended to yield a

reasonable net return taking into account the safety of the investment or (ii) in any manner

permitted by Section 345 of the Bankruptcy Code; provided, however, that the Reorganized

Debtor shall be under no obligation to so invest such Cash or proceeds and shall have no liability

to any party for any investment made or any failure to invest such Cash, other property, or

proceeds.

6.10.    <u>Delivery of Distributions</u>.  Except as provided in Sections 6.11 and 6.12 of the

Plan, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on

the proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of

address changes delivered to the Debtor or the Reorganized Debtor after the filing of any such

proof of Claim; or (3) at the address reflected in the Schedules if no proof of Claim is filed and

neither the Debtor nor the Reorganized Debtor has received a written notice of a change of

address.

6.11.    <u>Undeliverable Distributions</u>.  If the Distribution to the Holder of any Claim is

returned to the Reorganized Debtor as undeliverable, no further Distribution shall be made to

such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-

current address. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to

locate any Holder or an Allowed Claim.  Undeliverable Distributions shall remain in the

possession of the Reorganized Debtor until the earlier of (i) such time as a Distribution becomes

deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant

to Section 6.12 of the Plan.

6.12.    <u>Unclaimed Distributions.</u>  Any Cash or other property to be distributed under the

Plan shall revert to the Reorganized Debtor if it is not claimed (an "**Unclaimed Distribution**")

by the Holder entitled thereto before the later of (i) three months from the date the Unclaimed

Distribution in question is issued or (ii) thirty days after an Order allowing the Claim of that

Holder becomes a Final Order, at which time such Holder's Claim shall be deemed to be reduced

to zero and such Unclaimed Distribution shall revert to the Debtor.

6.13.    <u>Set-Off</u>.  The Reorganized Debtor may, but shall not be required to, set-off

against, or recoup from, the Distributions to be made pursuant to the Plan any and all Claims,

23

obligations, rights, causes of action, and/or liabilities of any nature that the Reorganized Debtor

may hold against the Holder of an Allowed Claim, provided, however, that neither the failure to

effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or

release by the Reorganized Debtor of any Claims, obligations, rights, causes of action, and/or

liabilities that the Reorganized Debtor has or may have against such Holder.

## ARTICLE VII

## IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

7.1.    Means for Implementation of the Plan.  In addition to the provisions set forth

elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

(A)    Procurement of Exit Financing. The Debtor shall close on the Exit

Financing Facility by executing and delivering to the Exit Financing Lender the Exit Financing

Loan Documents.

(B)    Funding of GUC Distribution Account.  The GUC Distribution Account

shall be funded through a contribution from the DIP Lender.

(C)    New Equity.  On the Effective Date, the DIP Credit Agreement Claim and

Second Lien Secured Claim shall be converted into equity in the Reorganized Debtor.

(D)    Cancellation of Equity Interests.  On the Effective Date, all existing

Equity Interests, including without limitation, all Class 4 Equity Interests shall be cancelled,

extinguished, and of no further force and effect, without further approval or action under any

applicable agreement, law, order, rule, or regulation.

(E)    Liquidation of Aged Inventory.  The Debtor shall pay M&T the first

proceeds of the Liquidation of Aged Inventory, net of cost (including the cost of the Debtor), up

to $500,000.  The balance, if any, of the proceeds of the Liquidation of Aged Inventory shall

inure to the benefit of the Estate or the Reorganized Debtor, as the case may be.

    7.2.   <u>Reorganized Debtor</u>.

    (A)   <u>Issuance of New Securities</u>.  On the Effective Date, the Reorganized

Debtor shall issue new membership or equity interests without further approval or action under

applicable law, order, rule, or regulation. The issuance of the new membership or equity interests

shall be exempt from registration under applicable securities laws pursuant to Section 1145(a) of

the Bankruptcy Code.

    (B)   <u>Continued Operations</u>.  The Reorganized Debtor will continue to operate

post-Effective Date.

    (C)   <u>Corporate Existence of the Debtor</u>.  As of the Effective Date, the

Reorganized Debtor shall maintain the Debtor's good standing as a corporation under the laws of

the State of New Jersey.

    (D)   <u>Management</u>. On and after the Effective Date, the Reorganized Debtor

shall be managed by the Debtor's pre-petition directors and officers or as otherwise determined

by the Reorganized Debtor.

    (E)   <u>Insurance Preservation</u>.  On the Effective Date, the Reorganized Debtor

shall assume all insurance policies issued or providing coverage at any time to the Debtor and all

agreements related thereto, as amended, modified, extended, renewed, restated, or replaced.

Nothing in this Plan, the Disclosure Statement, the Confirmation Order or otherwise shall

diminish or impair the validity or enforceability of any insurance policies or that may cover or

backstop Claims against the Debtor, the Reorganized Debtor, or their respective employees,

officers, directors, members, shareholders, or any other Person.

25

(F)    <u>Implementation Obligations</u>.  The Reorganized Debtor shall take or cause to be taken all corporate actions necessary or appropriate to implement all of the provisions of, and to consummate, the Plan and any documents required to be executed to implement the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval or action under any applicable law, order, rule, or regulation.  On the Effective Date, the appropriate officers of the Reorganized Debtor are authorized and directed to execute and to deliver all agreements, documents, and instruments contemplated by the Plan in the name and on behalf of the Reorganized Debtor.

(G)    <u>Revesting of Property in the Reorganized Debtor</u>.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor will be vested with all of the property of the Debtor's Estate, wherever situated, free and clear of all Claims, Liens and Equity Interests, and may operate its business and may use, acquire, or dispose of its assets free any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action will be preserved and retained solely for the Reorganized Debtor's commencement, prosecution, use, and benefit, except to the extent otherwise expressly provided in the Plan or in the Confirmation Order.

7.3.    <u>Corporate Action; Effectuating Documents; Further Transactions</u>.  On the Effective Date, all matters and actions provided for under the Plan that otherwise required or would require approval of the director or officers of the Debtor or the Reorganized Debtor shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the director or officers of the Debtor or the

58450/0001-16751642v2

Reorganized Debtor.  The Debtor and the Reorganized Debtor are authorized to execute, deliver, file, and/or record such contracts, instruments, releases, and/or other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.4.    <u>Recording Documents</u>.  Each and every federal, state, and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful, or appropriate to effectuate, implement, and/or consummate the transactions contemplated by the Plan including, but not limited to, any and all notices of satisfaction, release, and/or discharge of any Lien, Claim, or encumbrance not expressly preserved by the Plan and the Confirmation Order.

7.5.    <u>Creditors' Committee</u>.  As of the Effective Date, the Creditors' Committee shall be automatically dissolved and all of its members, Professionals, and agents shall have no further rights or duties arising from such membership, <u>provided, however,</u> that the Creditors' Committee shall exist after such date solely with respect to its final application for payment of an Administrative Expense Claim and the hearing regarding the same.

## **ARTICLE VIII**

## **DISCHARGE AND INJUNCTION**

8.1.    <u>Discharge of Claims and Termination of Equity Interests</u>.  Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests (other than those Claims and Equity Interests that are unimpaired or retained under this Plan) of any nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this

Plan on account of such Claims and Equity Interests. Upon the Effective Date, the Debtor and

the Reorganized Debtor shall be deemed discharged and released under Sections 524 and

1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Equity Interests (other than

those Claims and Equity Interests that are not impaired or reinstated under this Plan), including,

but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts

of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

8.2.    <u>Term of Bankruptcy Injunction or Stays</u>. All injunctions or stays provided for in

the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Except as otherwise expressly provided in the Plan or necessary to enforce the terms and

conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, all

Entities that have held, hold, or may hold Claims against or Equity Interest in the Debtor, are

permanently enjoined, from and after the Confirmation Date, from (i) commencing or continuing

in any manner any action or other proceeding of any kind with respect to any such Claim or

Equity Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means

of any judgment, award, decree, or Order against the Debtor on account of any such Claim or

Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the

Debtor or against the property or interests in property of the Debtor on account of any such

Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any

kind against any obligation due from the Debtor or against the property or interests in property of

the Debtor on account of any such Claim or Equity Interest.

8.3.    <u>Exculpation</u>. The Exculpated Parties shall not be liable to any Holder of any

Claim or Equity Interest for any act or omission occurring in connection with, or arising out of,

58450/0001-16751642v2

the Chapter 11 Case, the Plan, the Disclosure Statement, the pursuit of Confirmation of the Plan,

the consummation of the Plan, and/or the administration of the Plan or the property to be

distributed under the Plan, except for willful misconduct or gross negligence as determined by a

Final Order of the Bankruptcy Court.  The Exculpated Parties shall in all respects be entitled to

rely on the advice of counsel with respect to their duties and responsibilities under this Plan.

**ARTICLE IX**

**CAUSES OF ACTION**

9.1.    <u>Preservation of Causes of Action</u>.  Except as otherwise provided in the Plan, the

Confirmation Order, or in any document, instrument, release, or other agreement entered into in

connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, on the

Effective Date all Causes of Action shall vest in the Reorganized Debtor.  The Reorganized

Debtor may enforce, litigate, settle, or compromise any and all Causes of Action; the

Reorganized Debtor may also decline to do any of the foregoing.  The failure of the Debtor to

specifically list any Claim, right of action, suit, proceeding, or other Cause of Action in the Plan

does not, and shall not be deemed to, constitute a waiver or release of same.  Moreover, the

Reorganized Debtor shall retain the right to pursue any and all such Claims, rights of actions,

suits, proceedings, or other Causes of Action in its sole and absolute discretion.  No preclusion

doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or

otherwise) or laches shall apply to such Claims, rights of action, suits, proceedings, or other

Causes of Action upon or after the Confirmation or consummation of the Plan.

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1.    Rejection of Executory Contracts and Unexpired Leases.  The Debtor intends to serve a notice on parties to Executory Contracts and Unexpired Leases substantially in the form attached as **Exhibit 1** (the "**Assumption Notice**"), reflecting the Debtor's intention to assume the Executory Contracts or Unexpired Leases in connection with the Plan and indicating that the Cure Obligation shall be asserted against the Debtor or the Reorganized Debtor, as applicable, on the dated set for objections to the Plan.  In addition, the Assumption Notice will indicate that, in the event of any assumption dispute with respect to the Cure Obligation pertaining to the assumption of an Executory Contracts or Unexpired Leases, the Bankruptcy Court shall make a determination on the dispute before the assumption is effective or the Debtor may settle any dispute without any further notice to any party or any action, Order, or approval of the Bankruptcy Court.  On the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Assumption Notice shall be deemed rejected.  The Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

10.2.    Payments Related to the Assumption of Executory Contracts and Unexpired Leases.  Any Cure Obligation associated with an Executory Contract or Unexpired Lease shall be satisfied in connection with the assumption of same.  Assumption of an Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Cure Obligations, Claims, or defaults, whether monetary or nonmonetary, arising thereunder at any time before the Effective Date,  including, but not limited to defaults of provisions restricting the change- in-control or ownership interest composition of the Debtor or other bankruptcy-related defaults.

58450/0001-16751642v2

10.3.    Deadline for Filing Proofs of Claim Relating to Rejected Executory Contracts and Unexpired Leases.  If the rejection by the Debtor, pursuant to the Plan or otherwise, of an Executory Contract or Unexpired Lease gives rise to a Claim, a proof of Claim must be filed with the Bankruptcy Court and served upon the Clerk and the Debtor's counsel or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of the Confirmation Order and (ii) other notice that the Executory Contract or Unexpired Lease has been rejected.  Any proof of Claim not filed and served within such time periods shall be forever barred from assertion against the Debtor and its Estate.  Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under the Plan.

10.4.    Post-Petition Contracts and Leases.  Any and all contracts and leases entered into by the Debtor after the Commencement Date, and any Executory Contracts and Unexpired Leases assumed by the Reorganized Debtor, may be performed post-Effective Date by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

## ARTICLE XI

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

11.1.    Conditions Precedent to the Effective Date.  The Plan shall not become effective unless and until the following conditions are satisfied or waived:

(A)    The Confirmation Order shall have become a Final Order on or before February 28, 2019.

(B)    The Debtor and the Exit Financing Lender shall have closed on the Exit Financing Facility on or before February 28, 2019.

31

(C)     The DIP Lender contribution to the GUC Distribution Account shall have

been funded.

11.2.   <u>Effect of Failure of Conditions</u>.  If each condition precedent to the Effective Date

has not been satisfied or duly waived on or before the twenty-first day after the Confirmation

Date, then upon motion by any party-in-interest (such motion having been made before such

time that all of the conditions precedent to the Effective Date have been satisfied or duly waived)

and upon notice to such parties-in-interest as the Bankruptcy Court may direct, the Confirmation

Order shall be vacated by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that notwithstanding the

filing of such motion, the Confirmation Order shall not be vacated if each of the conditions

precedent to the Effective Date is either satisfied or duly waived by the Debtor before the

Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is

vacated pursuant to this Section 11.2, the Plan shall be deemed null and void in all respects

including, without limitation, the discharge of Claims pursuant to Section 1141 of the

Bankruptcy Code, and nothing contained herein shall (i) constitute a waiver or release of any

Claims by or against the Debtor or (ii) prejudice in any manner the rights of the Debtor.

11.3.   <u>Waiver of Conditions Precedent to Effective Date</u>.  The Debtor may waive any or

all of the conditions precedent to the Effective Date, in whole or in part, and without notice to any

party or an Order of the Bankruptcy Court, <u>provided</u>, <u>however</u>, the Debtor shall provide the

Creditors' Committee with written notice of any such waiver and an opportunity to consent,

which consent shall not be unreasonably withheld.  The failure to satisfy or to waive any

condition precedent may be asserted by the Debtor regardless of the circumstances giving rise to

such situation (including any action or inaction by the Debtor).  The failure of the Debtor to

58450/0001-16751642v2

exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each

such right shall be deemed an ongoing right that may be asserted at any time.

11.4.    <u>Simultaneous Transactions</u>.  Except as otherwise expressly set forth in the Plan or

the Confirmation Order, each action to be taken on the Effective Date shall be deemed to occur

simultaneously as part of a single transaction.

**<u>ARTICLE XII</u>**

**<u>RETENTION OF JURISDICTION</u>**

The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of and

related to the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a)

and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(A)    To hear and determine any objections to Claims and to address any

issues relating to Disputed Claims;

(B)    To hear and determine any disputes regarding the assumption of

any Executory Contracts and Unexpired Leases, including with respect to any dispute

relating to Cure Obligations;

(C)    To enter and implement such Orders as may be appropriate in the

event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(D)    To issue any and all Orders in aid of the execution and

consummation of the Plan to the extent authorized by Section 1142 of the Bankruptcy

Code;

(E)    To consider any amendments to or modifications of the Plan, to

cure any defect or omission, or to reconcile any inconsistency in any Order of the

Bankruptcy Court, including, without limitation, the Confirmation Order;

33

(F)     To hear and determine all Fee Applications;

(G)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order;

(H)     To hear and determine matters concerning federal, state, and local taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(I)     To hear any other matter not inconsistent with the Bankruptcy Code;

(J)     To enter a final decree closing the Chapter 11 Case;

(K)     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(L)     To decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any motions and/or applications involving the Debtor that may be pending on the Effective Date;

(M)     To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan or the Confirmation Order, except as otherwise provided herein;

(N)     To determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(O)     To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations,

34

indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(P)    To resolve disputes concerning Disputed Claims, thereto, or the administration thereof; and

(Q)    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Date, and the combined hearing on the approval of the Disclosure Statement and the confirmation of the Plan for the purpose of determining whether a Claim or Equity Interest is disallowed or discharged hereunder or for any other purpose.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, they shall not limit or otherwise affect the provisions of the Plan, and they shall not constitute a part of the Plan for any other purpose.

13.2.    <u>Exhibits/Schedules</u>.  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

13.3.    <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the Holders of Claims and Equity Interests, and their respective successors and assigns.

13.4.    <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

58450/0001-16751642v2

13.5.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of such jurisdiction.

13.6.    <u>Amendment or Modification of the Plan</u>.  Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, <u>provided</u>, <u>however</u>, that (i) the Plan, as altered, amended, or modified, must satisfy the conditions of Sections 1122 and 1123 of the Bankruptcy Code and (ii) the Debtor must comply with Section 1125 of the Bankruptcy Code.

13.7.    <u>Severability</u>.  In the event the Bankruptcy Court determines, on or before the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be deemed invalid, void, or unenforceable with respect to the Holder of such Claim or Equity Interest as to which the provision is determined to be invalid, void, or unenforceable only.  The invalidity, voidability, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.8.    <u>Revocation or Withdrawal of the Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan on or before the Confirmation Date.  If the Debtor revokes or withdraws the Plan on or before the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or to prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

58450/0001-16751642v2

13.9.    <u>Notices</u>.  All notices, requests, and/or demands to or upon the Debtor must be made in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Icon Eyewear, Inc.
> c/o David M. Bass, Esq.
> Cole Schotz P.C.
> Court Plaza North
> 25 Main Street
> Hackensack, New Jersey 07601
> (201) 489-3000
> (201) 489-1536 Facsimile

13.10.    <u>Withholding and Reporting Requirements</u>.  In connection with the consummation of the Plan, the Debtor and the Reorganized Debtor (including in its capacity as Disbursing Agent) shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

13.11.    <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Reorganized Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.12.    <u>No Admissions</u>.  Notwithstanding anything contained herein to the contrary, nothing in this Plan shall be deemed as an admission by any Person or Entity with respect to any matter set forth herein.

13.13.    <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, nor the making of statements and provisions contained herein, nor the taking of

37

any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of (i) the Debtor, the Holders of Claims or Equity Interests, or other parties-in-interest or (ii) any Holder of a Claim or other party-in-interest before the Effective Date.

13.14.  <u>Payment Dates</u>.  If any Distribution or act under the Plan is required to be made or falls on a date which is not a Business Day, then the making of such Disbursement or the performance of such act may be completed on the following Business Day and shall be deemed to have been timely completed.

13.15.  <u>Inconsistency</u>.  In the event any inconsistency exists between or among the Plan, the Disclosure Statement, and/or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

13.16.  <u>Section 1125(e) Good Faith Compliance</u>.  The Debtor and its Professionals shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

13.17.  <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in this Chapter 11 Case.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and of all other compromises and settlements provided for in the Plan and the Chapter 11 Case, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, and all Holders of Claims and Equity Interests against the Debtor.

58450/0001-16751642v2

13.18.  <u>Closing of Case.</u>  Upon substantial consummation of the Plan, the Reorganized

Debtor may move for entry of a final decree to close the Chapter 11 Case and may request such

other Order or Orders as may be just.

Dated:  January 15, 2019

ICON EYEWEAR, INC.

By:  Brian Liston
     Senior Vice President of Finance

58450/0001-16751642v2

**<u>SCHEDULE 1</u>**

List of Causes of Action

**Non-Insider Recipients of Payments Within 90 Days of the Filing Date**

1 SYNC
1001 Sixth Associates
101 Optics
2XL Imaging
A & H Mfg. Co.
A.G Adjustments, LTD.
All- Pro Sales& Marketing, LLC
Aqua Fresca
Avery Dennison HK B.V.
Avery Hong Kong
B & G Plastics, Inc.
Bancorpsv
Bar Codes Talk, LLC
Barclay Brand Ferdon
Basic
Basic Claim Fund
Berencie Ramirez
Berenice Ramirez
Blue Wave Concepts
Brandgenuity LLC
Brian Liston
Bruce Bartley
Bureau Veritas Hong Kong Ltd.
C.H. Robinson Worldwide, Inc.
Canon Financial Services Inc.
Carissa Jablonski
Charles Lusk
Chase Card Services
Chris San Juan
City Pallets LLC
Claribel Vargas
Cole Schotz P.C.
Comcast Business
Commerce Technologies, Inc.
Contempo Packaging Co.
Costco Wholesale
D & E Packaging Inc.
Danyang Vena Optical Co., Ltd.
Dennis David
Diana Tavares
Dynamic Express Inc.
Easyclean Co., Limited
Elite Service Group
Employers Vision Trust

Ephraim Zinkin
Ever Eyewear Co. Ltd.
Fedex
FedEx Freight
Filco Carting Corp.
FineLine Technologies
Fox Optical Inc.
Frontier Express
Gaeta Recycling Company Inc.
Geoffrey Beene, LLC
Getzler Henrich & Associates LLC
Gianna Avila
Global Benefit Services
Globaltranz Enterprises, Inc.
Gotham Licensing Group, LLC
Gottlieb, Rackman & Reisman, P.C.
Graphic Measures International
GXS Active Catalog
Hanson Management LLC
Harris K. Weiner, Esq.
Havana 59 Corp
HYG Financial Services
IMC Licensing
Information Resources, Inc.
Internal Revenue Service
Internal Revenue Service Center
International Trimmings & Labels
Intertrade Systems Inc.
Investors Bank
Jack Hanlon
Jeb Remodeling, LLC
Jeffrey Banks
Julie Chang
KLB Inc.
Lamar Plastics Packaging, LTD.
Laura Smith
Laurie Lewis
Lawrence Service LLC
Leo's Transport Co.
M&T Bank
M&T Logistics, Inc.
Merchants Alarm Systems
MetLife - Group Benefits
Michael Cotton
Moonman HVAC, LLC
MSD Eyewear

2

New Jersey Division of Taxation
Nexgen Packaging, LLC
North Central Sales
NRT Trucking
O.E.C. Express Corp.
Out of the Woods
Pacific Logistics Corp.
Paige Packaging
Park City Group
Penn Mutual Life Insurance Company
Pennant Financial Corp.
Priority 1 Inc.
PSE&G Co.
Quality Retail Merchandising
Quality Temp, Inc
Rich Rosenfeld
Rock Solid Business Solution
Royal West Sales, Inc.
Russin, Vecchi & Berg, LLP
Salestrac, USA
Sealectric Corporation
SGS HK
Shopify
Silver Star Reporting Inc.
SPAR Group
Spectrum Business
Spire Group, PC
SPS Commerce
Stacy A. Trommelen
Staples Advantage
Stickel Packaging Supply
Strategic Funding LLC
Stripe.com
TaiZhou HaiChen Glasses Co., Ltd.
TaiZhou JinMao Glasses Co., Ltd.
TaiZhou KaiLiang Glasses Co., Ltd.
TaiZhou YaFeng Glasses Co Ltd
TaiZhou YuTu Glasses Co., Ltd.
The Vision Council
Travelers
True Commerce, Inc.
U Line
U.S. Bank N.A.
UPS
UPS Canada
UPS Freight

3

UPS Supply Chain Solutions, In
US Bank Equipment Finance
Verizon Wireless
Verizon-Warehouse
W.B. Mason
Wenzhou Classic Packing Co., Ltd.
WenZhou FuFeng Printing Co., Ltd.
WenZhou HaiLe Glasses Co., Ltd.
WenZhou HeXing Glasses Co., Ltd.
WenZhou HeYi Packaging Co. Ltd.
Wenzhou HongJian Optics Co., Ltd.
Wenzhou Passion Imp. & Exp. Co., Ltd
Wenzhou Royal Optical Co., Ltd.
Wenzhou Union Fashion Co., Ltd.
WenZhou XingMa Packaging Co., Ltd.
WenZhou ZhongSheng Glasses Co., Ltd
WuXi Mazza Marcati Optics Co., Ltd.
XinDai Printing Co., Ltd
Zhejiang Wenzhou Packaging Imp&Exp

**Insider Recipients of Payments Within 1 Year of the Filing Date**

Bruce Bartley
Julie Chang
Michael Chang
Brian Liston
Janine Thompson
Ephraim Zinkin

**Litigation Counterparties**

FGX International Inc.
AAA License Company, LLC

**Other Causes of Action (Including Fraudulent Transfers)**

Ephraim Zinkin

58450/0001-16790091v1

# EXHIBIT 1

Form of Assumption Notice

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ICON EYEWEAR, INC.,[1]<br><br>        Debtor-in-Possession. | Chapter 11<br><br>Case No. 18-34902 (JKS) |

**NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES PURSUANT TO PLAN OF REORGANIZATION**

    **PLEASE TAKE NOTICE THAT** on January 15, 2019, Icon Eyewear, Inc., the within debtor and debtor-in-possession (the "**Debtor**"), filed a Plan of Reorganization (the "**Plan**")[2] and a Disclosure Statement (the "**Disclosure Statement**") in connection therewith with the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"). On _____, 2019, the Bankruptcy Court (i) conditionally approved the Debtor's Disclosure Statement with respect to the Plan pursuant to Section 1125 of the Bankruptcy Code and (ii) authorized the Debtor to solicit votes with regard to the approval or rejection of the Plan.

    **PLEASE TAKE FURTHER NOTICE** that a joint hearing (the "**Joint Hearing**") to consider (i) the adequacy of the Disclosure Statement pursuant to 11 U.S.C. § 1125(b) and (ii) confirmation of the Plan will be held at **10:00 a.m. (prevailing Eastern Time) on February 21, 2019**, before the Honorable John K. Sherwood, United States Bankruptcy Judge, Courtroom 3D

---

[1] The last four digits of the Debtor's federal identification number are 1657.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102.  The Joint Hearing may be continued from time to time without further notice other than an announcement of the adjourned date(s) at the Joint Hearing, and the Plan may be modified, if necessary, prior to, during, or as a result of the Joint Hearing, without further notice to interested parties.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Section 10.1 of the Plan, the Debtors may assume Executory Contracts or Unexpired Leases by serving a notice on the counterparties thereto (i) reflecting the Debtor's intention to assume certain Executory Contracts or Unexpired Leases in connection with the Plan, (ii) indicating that a Cure Obligation, if any, shall be asserted against the Debtor or the Reorganized Debtor, as applicable, on the date set for objections to the Plan, and (iii) indicating that, in the event of any assumption dispute with respect to a Cure Objection (defined below), including a Cure Obligation, the Bankruptcy Court shall make a determination on the dispute before the assumption is effective or the Debtor may settle any dispute without any further notice to any party or any action, Order, or approval of the Bankruptcy Court.  On the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Assumption Notice shall be deemed rejected and the Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Section 10.1 of the Plan, the Debtor has elected to assume the Executory Contracts and Unexpired Leases identified on **Exhibit A** hereto (the "**Assumed Executory Contracts and Unexpired Leases**").

**PLEASE TAKE FURTHER NOTICE** that the Debtor has indicated on Exhibit A the Cure Obligations, if any, that must be satisfied to cure all defaults under the Executory Contracts and Unexpired Leases.  Any party seeking to object to the Cure Obligations as determined by the Debtor, or to otherwise assert that any other amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under a particular Executory Contract or Unexpired Lease, is required to file a written objection with the Bankruptcy Court in compliance with the Bankruptcy Rules and the Local Rules (a "**Cure Objection**") no later than ten business days after the service of this Notice (the "**Cure Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that unless a Cure Objection is filed and served on or before the Cure Objection Deadline, all parties shall (i) be forever barred from objecting to the Cure Obligations and from asserting that any other amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under a particular Executory Contract or Unexpired Lease with respect to the Cure Obligations; and (ii) be forever barred and estopped from asserting or claiming against the Debtor or the Reorganized Debtor that any additional amounts are due, other defaults exist, or other obligations are owed through and including the Effective Date, except as may have been reserved in any such Cure Objection.

**PLEASE TAKE FURTHER NOTICE** that if a Cure Objection is timely filed and not withdrawn or resolved, then the Cure Objection will be determined by the Court at a scheduled hearing.

**PLEASE TAKE FURTHER NOTICE** any party wishing to object to the proposed assumption of a particular Executory Contract or Unexpired Lease on any basis other than the

amount of the Cure Obligations must also submit such objection (an "**Assumption Objection**") in writing no later than 10 days after service of this Notice (the "**Assumption Objection Deadline**") by (i) filing the Assumption Objection with the Bankruptcy Court and (ii) serving the Assumption Objection upon counsel to the Debtor, Cole Schotz P.C., Court Plaza North, 25 Main Street, P.O. Box 800, Hackensack, New Jersey 07601, Attention: David M. Bass and Rebecca W. Hollander.

**PLEASE TAKE FURTHER NOTICE** that information regarding the Debtor's and the Reorganized Debtor's adequate assurance of future performance of the Cure Obligations can be requested by the counterparty to an Executory Contract or Unexpired Lease listed on Exhibit A, in writing, from counsel to the Debtor, Cole Schotz P.C., Court Plaza North, 25 Main Street, P.O. Box 800, Hackensack, New Jersey 07601, Attention: David M. Bass and Rebecca W. Hollander.

**PLEASE TAKE FURTHER NOTICE** that unless an Assumption Objection and/or Cure Objection is filed and served as provided above before the Assumption Objection Deadline, all parties shall be deemed to have (i) consented to the assumption of the Executory Contracts and Unexpired Leases set forth on Exhibit A and (ii) waived all objections thereto.

**PLEASE TAKE FURTHER NOTICE** if an Assumption Objection is timely filed and not withdrawn or resolved, then the determination of the assumption of the Executory Contract or Unexpired Lease in question will be determined by the Court at a hearing.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY APPROVE THE ASSUMPTION OF THE EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITHOUT FURTHER NOTICE OR HEARING.

DATED:_____, 2019          Respectfully submitted,

**COLE SCHOTZ P.C.**

By:____*/s/ David M. Bass*_____
          Michael D. Sirota
          David M. Bass
          Rebecca W. Hollander
          Court Plaza North
          25 Main Street
          Hackensack, New Jersey 07601
          (201) 489-3000
          (201) 489-1536 Facsimile
          msirota@coleschotz.com
          dbass@coleschotz.com
          rhollander@coleschotz.com

          *Proposed Counsel to Debtor and*
          *Debtor-in-Possession*

3

# **EXHIBIT A**

## **Assumed Executory Contracts and Unexpired Leases**

| Counter-Party | Executory Contract/ Unexpired Lease | Cure Amount |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |

## **EXHIBIT B**

Liquidation Analysis

**Liquidation Analysis - As of the filing date 12/20/2018**

| | 12/20/2018 Balance Sheet | Adjustments | Liquidation Value | |
|---|---|---|---|---|
| Cash | $22,778 | | $22,778 | |
| Accounts Receivable, net | 1,337,123 | (276,824) | 1,060,299 | A |
| Inventory (net) | 8,097,388 | (5,605,745) | 2,491,643 | B |
| Prepaid Expenses | 280,163 | (280,163) | - | |
| PP&E, net | 595,086 | (520,086) | 75,000 | C |
| Other Assets | 32,950 | (32,950) | - | |
| **Total Assets** | **10,365,487** | **(6,715,768)** | | |
| | | | | |
| **Liquidation Proceeds Available** | | | 3,649,719 | |
| M&T Bank Secured Debt | | | (7,800,000) | |
| | | | | |
| **Net Liquidation Shortfall After Payment of M&T Secured Debt** | | | (4,150,281) | |
| | | | | |
| Five Comets Secured Debt (DIP) | | | (1,750,000) | |
| Five Comets Secured Debt (Prepetition) | | | (730,000) | |
| | | | | |
| **Net Liquidation Shortfall After Payment of Five Comets Secured Debt** | | | (6,630,281) | |
| | | | | |
| Chapter 7 Administration | | | | |
| Chapter 7 Administration - Professional Fees | | | (25,000) | |
| Chapter 7 Administration - Statutory Commission | | | (132,741) | |
| Total Chapter 7 Administration | | | (157,741) | |
| | | | | |
| **Net Liquidation Shortfall After Chapter 7 Administration** | | | (6,788,022) | |
| | | | | |
| Chapter 11 Administration | | | | |
| Administrative Expenses - Creditors Committee Prof. Fees | | | (80,000) | |
| Administrative Expenses - Debtor Prof. Fees | | | (20,000) | |
| UST Fees | | | (10,400) | D |
| Priority Claim | | | (12,850) | |
| Total Chapter 11 Administration | | | (123,250) | |
| | | | | |
| **Net Liquidation Shortfall After Chapter 11 Administration** | | | (6,911,272) | |
| | | | | |
| **Available for Unsecured Creditors** | | | **0.00** | |

| | | | |
|---|---|---|---|
| A | Accounts Receivable :Gross | $1,914,477 | |
| | less: Uncollectable Accounts  (Kroger & Fit 2 Run) | (159,013) | |
| | Discounts & Allowances | (577,354) | |
| | Net Accounts Receivable | 1,178,110 | |
| | Reserve for General Uncollectable (10%) | (117,811) | |
| | Net Accounts Receivable | $1,060,299 | |
| | | | |
| B | Gross Inventory at 12/20/18 | 8,097,388 | |
| | Non Eligible Stock (Tags/Labels, Cases, Display) | (546,956) | |
| | Net Eligible Stock on Hand | 7,550,432 | |
| | Technical Valuation Services appraisal report June 2018  (Gordon Brothers) - net orderly liquidation % in high season Dec-May | 33% | |
| | Net Orderly Liquidation Value | $2,491,643 | |
| | | | |
| C | Proceeds from sale of Hard Assets | 75,000 | |
| | | | |
| D | US Trustee Fee based on $3MM disbursements | 10,400 | |